RUSSEL HARVEY
c/o David Goodwin
10153 ½ Riverside Drive
PMB 793
Toluca Lake, CA 91602

PHONE: (646) 709-3163
EMAIL: Russelaw@Yahoo.com

FILED

2017 AUG 22 P 2: 22

U.S. DISTRICT COURT
HARTFORD CT

## U.S. DISTRICT COURT, DISTRICT OF CONNECTICUT

RUSSEL HARVEY,                          )
                                        )   Case No. 3:17CV1417 SRU
            *Plaintiff,*                 )
                                        )
    - against -                          )
                                        )   <u>COMPLAINT</u>
TOWN OF GREENWICH,  AND                  )
MARK KORDICK                            )
                                        )
            *Defendants.*                )

Russel Harvey, *pro se*

August 19th, 2017

## Preliminary Statement

1.   This is a Civil Rights Act and also diversity action for damages defendants together, individually and also collectively caused me by their participation in a wrongful Connecticut state court prosecution, for which Mark Kordick and other members of the Greenwich Police Department illegally entered my apartment, wrongfully arrested me, used excessive force to beat me, threatened me with additional bodily injury and death, wrongfully jailed me, and through perjurious statements in their police reports(s) and complaint(s), brought criminal charges against me which they knew were not true and of which I was innocent, which - but only after I suffered great loss – were dismissed in my favor on August 19th, 2014.

## Jurisdiction and Venue

2.   This action arises under 42 U.S.C. § 1983 and principles pendent thereto and is also one between citizens of different states re. which the amount in controversy exclusive of costs and interest exceeds $75,000 and so the court's jurisdiction is conferred by 28 U.S.C. §§ 1343(a), 1332(a), and 1367.

3.   I demand a jury trial.

4.   Most of the acts sued upon and otherwise relevant to this lawsuit occurred and the parties at all relevant times resided or were conducting business in ways relevant to this lawsuit in or near Greenwich, Connecticut, within the venue of the U.S. District Court for the District of Connecticut.

2

## The Parties

5. I, plaintiff, Russel Harvey, am a United States citizen who was residing in Greenwich, CT, when the acts here complained of occurred.

6. Defendant Town of Greenwich Connecticut is a municipality in the State of Greenwich, Connecticut, a state actor or "person" for Section 1983 purposes, and is obliged by applicable state and federal law. Among other activities, The Town of Greenwich, CT, employs and operates a police department, for which it is responsible for hiring, training, supervising and setting policies for its police officers, including Mark Kordick.

7. Defendant Mark Kordick was employed by the Town of Greenwich, CT at the time of my wrongful arrest as a police officer, a state actor under color of state law, and is currently a captain in their police department. Mark Kordick was both (a) the arresting officer who, with two other officers, entered my home and arrested me with excessive force and without a warrant on false and fabricated charges, and  (b) the complaining witness who caused my wrongful prosecution by making perjurious statements in his police report(s) and the criminal complaint(s) he signed.

## Facts

8. I am a clean-living person of good character, a college graduate, and a talented artist, writer, photographer, performer, and journalist who moved to Greenwich, CT in February, 1996 to seek refuge from harassment by police officers in my longtime and childhood hometown of Mamaroneck, NY. The harassment in Mamaroneck was retaliatory conduct by police officers in that municipality after I had sued them, and received a substantial settlement, for their violating

3

my civil rights. My lawsuit against the Village of Mamaroneck was in response to my being beaten and detained by members of their police force as punishment for my criticizing them when I was attacked by strangers right in front of their police station while several officers stood outside and failed to come to my aid.

9.    Before then, I had contributed thousands of hours of time and effort to public service work, at the grass roots and national levels, by using my special performance and artistic skills (for which I have received numerous awards, citations, favorable media coverage and commendations) and had, among other things, been a professional cartoonist and entertainer and caricaturist at over one thousand events (*e.g.*, at major resorts, private and corporate parties, and on also on national television) including with a history of working with people of all ages without having ever done any sort of inappropriate much less of criminal behavior, and I had never been so much as arrested for any crime, even the slightest misdemeanor or felony (and, to this day, have never been convicted of any crime).

10.    Shortly after my move to Greenwich, Officer Kordick and other members of the Greenwich Police Department began harassing me. This went on for several months before the night I was arrested.

11.    Their harassment was in retaliation for my having sued, and obtained a substantial settlement, from The Village (Town of) of Mamaroneck, NY, in a previous civil rights lawsuit, before retaliatory conduct by police in that municipality forced me to move away from my longtime, childhood home, there, and seek refuge in Greenwich.

4

12.    By the night of my arrest, Kordick and other Greenwich police officers had already come to my house several times, and harassed and threatened me in the middle of the night. One night, approximately one dozen Greenwich police officers banged on the outside walls and windows, shined their flashlights through my windows, called out my name, and made bizarre animal sounds, grunting, screeching and hooting.

13.    One night, Officer Kordick stopped me as I was walking on Greenwich Avenue, the main street in town (approximately 1/2 mile from my apartment) and pushed me in the back of his police car. He drove me around for several minutes and made threatening comments. I asked if I was under arrest. He said, "no, you are being investigatingly detained." Finally, he stopped and let me out on another section of Greenwich Avenue. Greenwich Police Department Lt. Keegan was there.

14.    I immediately complained to Lt. Keegan about Officer Kordick. Keegan sneered at me and took my photograph with a Polaroid camera and said "we'll be keeping an eye on you."

15.    Approximately three weeks before my arrest, at approximately 3 in the morning, I heard a noise and got out of bed and went from my bedroom to my living room: I was shocked to find a Greenwich Police Officer standing in my living room. I asked him what he was doing. He said that he was responding to an anonymous noise complaint and he decided to come into my house because (he falsely claimed) he knocked, called out to see if anyone was home, and

found the door was unlocked. I asked him if he had heard any noise and he said, no. I told him to leave and he did. This event terrified me.

16.     For several weeks, prior to my arrest, police cars would park on the street in the middle of the night, outside my apartment, at the end of my driveway. At times, they would flash lights into my windows from their cars.

17.     I complained, several times, to The Town of Greenwich and supervising PD officers (including Lt. Keegan). They did not help me and stop the harassment. Rather, they mocked me or were at best indifferent. Their failure to train, supervise, or establish a policy to stop this harassment condoned this misconduct so that it escalated. The Town of Greenwich actively participated in my injuries and is liable pursuant to *Monell v. Department of Social Services, 436 U.S. 658 (1978)*.

18.     On the night I was falsely arrested, at about 3:30 AM, Officer Kordick and two other officers came to my apartment, without a warrant or probable cause, claiming to investigate an "anonymous" "noise complaint." In fact, I was in my apartment, alone, and reading. I was "as quiet as a mouse." I was not talking to anyone on the phone, was not watching TV and did not even own a stereo.

19.     The officers stood on my porch, which was my private entrance and would not leave, though I asked them several times to leave and told them I did not want to talk to them and

did not want them to enter my home. My porch was set approximately 60 feet from the public road and led to my private entrance.

20.     I lived at 161 East Elm Street, in a private, two bedroom apartment, on the entire bottom floor of a two family house. The apartment above mine, on the second floor, had a private entrance in the back. My private porch leading to my private entrance was my curtilage, so the intrusion by the Police onto my private porch, and their remaining there even after I repeatedly demanded that they leave, violated my Fourth Amendment rights.

21.     Though Officer Kordick was aggressive and threatening and repeatedly lied to me, I remained composed, civil and cordial.

22.     Though I told Officer Kordick I did not want to talk to him, he continued to pester me with questions. He admitted he had heard no noise, and that he had come other times, and never heard any noise any of the times he had come to my apartment.  I asked him if he had a warrant. He said he did not, and he did "not need a warrant."

23.     He tried several times to force the door open with the aid of the other officers. They tried pushing it open with their shoulders. He placed an object in the door's lock and tried to pick it open, so I had to stand at the door, holding the interior "thumb turn" to keep him from opening the lock.  I asked him what he was doing. He said the landlord, Rose Pinchuk, had given him a key, and identified her by name. (Mrs. Pinchuk later stated in writing that this was not true.)

24.    During this "conversation," Officer Kordick admitted he had detained me and thrown me in the back of his car that earlier night on Greenwich Avenue.

25.    Officer Kordick admitted he had come to my apartment several times, previously. Chillingly, he said he had watched me through my window on those previous occasions.

26.    He knew I have "OCD" and a phobia of germs and mocked me for this. He said he had watched me through my windows washing my hands and asked me how often I washed my hands. I felt his actions in this regard were bizarre and terrifying.

27.    I said "isn't it strange that you claim to be investigating noise complaints, but you never hear any noise?" He said "I don't have to hear any noise, Russel."

28.    He said, "How many times did the police in Mamaroneck come to your apartment' for noise complaints?" This veiled threat was a reference to his acting in cahoots with the police in Mamaroneck and the harassment I suffered at the hands of the Mamaroneck police which was manifested in great part by their claiming to have received anonymous noise complaints which resulted in their ringing my doorbell and banging on my door in the middle of the night on an almost nightly basis, eventually forcing me to leave my home, there.

29.    Officer Kordick said the Mamaroneck police had told him all about me, thus admitting he was acting at the behest of the Mamaroneck police and continuing their retaliatory conduct.

8

30.     I told Officer Kordick, "I think you are harassing me." He said, "Russel, if I were harassing you, you wouldn't think I was harassing you. You'd know I was harassing you."

31.     Officer Kordick said, "you make me want to take my gun out and point it at you." This threat made me fear for my life and safety.

32.     After approximately twenty minutes, Officer Kordick and the other officers stepped away from my door. I thought this was the end of it. However, a few minutes later, they came back, took me off guard, forced the door open, reached through my dooway's threshold and grabbed me. They dragged me out of my house, threw me down the steps, and tossed me on the ground, face down.

33.     Officer Kordick is a very heavy man. At the time, he weighed in excess of 250 lbs. He held me down with his body's weight and his knee in my back. I am 5'10" and at the time, I weighed 150 lbs. He and the other officers beat me severely, with their fists and their flashlights. They also kicked me. I had contusions, scrapes, pain in my back and arm, etc., and suffered great pains. I required ER treatment following the incident.

34.     Throughout this beating, I offered no resistance. I acted as a "rag doll" and told them they were hurting me and begged them to stop.

35.     They handcuffed me with my hands behind my back. The cuffs were so tight and my arms were twisted in such a way that it was very painful and caused some numbness. I told them "I'm an artist. Please! The handcuffs are too tight! I can't feel my hand!  My drawing arm is my life!"

36.     Kordick and the other officers took turns holding me down on the ground. While one officer held me down, the other two would take turns going in and out of my apartment.

37.     Kordick led me down my driveway and pushed me in the back of his patrol car. He would not let me lock my door.  As he was driving, he said, "Russel. This town isn't big enough for the both of us. This is a small town. You are what we call an undesirable. We know what to do with undesirables. It would be very easy for you to just disappear and wind up in the side of the road with a bullet in your head." This threat put me in even greater fear for my life. I was afraid I might not even survive the night.

38.     Eventually, Officer Kordick drove to the Greenwich Police Station.

39.     At the Greenwich Police Station, Kordick pushed me in a holding cell and removed the handcuffs. He fingerprinted me and took my photograph. There was a Sgt. on duty at a desk in the next room which I could see through a doorway. I begged her to help me and complained of Officer Kordick's abuse. She told me to "shut up."

40.        I was not permitted to make a phone call. I gave Officer Kordick the names of my two brothers who lived in Westchester County, nearby, and he called them. They came and paid a $250 bail and I was released at approximately 6 AM.

41.        Before I left the police station, I was giving two tickets signed by Officer Kordick charging me with two misdemeanors:  53a-182 DISORDERLY CONDUCT; and 53a-167a INTERFERE WITH OFFICER/RESISTING ARREST.  As these were the charging documents in my prosecution, Officer Kordick was the complaining witness. There was no information written on the tickets describing what I had done, other than that one said, " 53a-182 DISORDERLY CONDUCT" and the other said, " 53a-167a INTERFERE WITH OFFICER."

42.        These charges and all statements Officer Kordick made to support them, were false, perjurious and malicious. Officer Kordick did not observe me to engage in any criminal act, and had no credible evidence that I committed any criminal act. He did not hear me make any noise.  When he came to my door, even though I asked him to leave and he would not leave, I was at all times, composed, civil and cordial. He completely fabricated the claim that I interfered with an officer and/or resisted arrest.

43.        When I returned home, I photographed my injuries. My door was open and a valuable and irreplaceable book was missing. This was a one of a kind bound volume of the first 14 issues of Sad Sack Comics, which was published by my late father, Alfred Harvey, the Founder and President of Harvey Comics. Sad Sack was created by my late Godfather, George

11

Baker. Its value as a collector's item is more than $25,000. However, as an heirloom, this book was a priceless and irreplaceable gift to me from my late father and Godfather.

44.    I hired a local attorney. I appeared in court, personally, for the first appearance. In the Courtroom that day, my lawyer told me (and so I say on information and belief) the prosecutor indicated he was willing to admit that the police acted improperly in entering my apartment and arresting me in the middle of the night without a warrant and would dismiss.

45.    However, out of the blue, without any explanation and while I was still sitting in the courtroom, my attorney attempted to get me to sign a petition for Accelerated Pretrial Rehabilitation: admitting guilt and accepting probation. He said, "Just sign it. You don't have to read it." I did read it. I told him, "I committed no crime. There's nothing requiring my rehabilitation. I will not sign that paper. It would be a lie."

46.    The case was adjourned to a later date, and my attorney appeared on my behalf. My attorney told me that the prosecutor and the judge had agreed I did not have to appear personally, and he could make subsequent appearances for me.

47.    Unfortunately, Officer Kordick and other Greenwich Police Officers continued to harass me. For instance, when I walked to the grocery store, a police car would drive up next to me and continue at my side as I walked, turning down each street I turned. The officer driving the car would turn his head to me and make menacing looks. On several occasions, the officer

who followed me was Kordick. He would yell my name out the window of his car, wave, and say he was keeping an eye on me.

48.    When I shopped at local stores, the police would go in, directly after I left, and disparage me to the clerks or managers. They would tell the clerks or managers that I was a dangerous criminal and that they were investigating me and that they should call the police whenever I came in their store. I personally observed police entering stores after I left, and I was told by several clerks and managers of stores what the police had told them.

49.    My attorney told me that it was likely Kordick and the others would follow through on their threats. He agreed they might even kill me. He said their case had no merit and that they should not have entered my apartment and arrested me without a warrant at 3:30 AM in my own home. He told me that he could handle the case without my appearing in court, personally, and that, for my health and safety, I should get out of town and move as far away from them as possible. He said he didn't want to feel responsible if I stayed in Greenwich and the police killed me.

50.    For those reasons, foremost that my life was in danger, in my own home, by police who had repeatedly broken into my home, beaten me, threatened to kill me, and fabricated criminal charges against me, while their superiors ignored my complaints and condoned this misconduct, and because I had no other way to protect myself, my property and my life, I moved. Officer Kordick told me he would kill me if I did not "get out of town," and that is what I did.

51.    Considering the facially obvious, and troubling, misconduct by Officer Kordick and his fellow officers in entering my apartment without a warrant and arresting me without a warrant in the middle of the night for an anonymous noise complaint, the prosecutor should never have participated in this wrongful prosecution, and should have moved to dismiss. The Court, too, had a *sua sponte* duty to dismiss. Considering the obvious misconduct by the police, However, this case lingered for many years before it was finally dismissed. During this time, it hung over my head, as a disability and restraint, damaged my reputation, and caused me great suffering and additional injuries.

52.    At one point, though my attorney continued to make appearances on my behalf as agreed to by the judge and prosecutor, the Greenwich Police told California authorities to take me into custody, and I was jailed for approximately 36 hours, for a bail of $5,000 before Connecticut waived rights to extradition (for these misdemeanors)!

53.    Also, while these false charges were pending, the Greenwich Police Department deliberately, maliciously and falsely communicated to other jurisdictions that I had been "convicted" of these crimes, (not, merely, that I was only [and falsely] charged with them).

54.    They also told authorities in these other jurisdictions that they arrested me because I had "been screaming out loud in (my) house half the night... police came... and (I) became combative with police" and that after they arrested me, they searched my house and found that my "toilet was overflowing with feces."

55.     As a result of those false statements, I was harassed by authorities in other jurisdictions.

56.     Also, once, Canadian Immigration told me I could not remain in their Country, other than for a short visit, because of the (false) criminal charges in Greenwich.

57.     Also, the false charges in Greenwich damaged my ability to find meaningful employment, and capitalize on my talents and education.

## CONCLUSION AND CLAIMS

58.     Officer Kordick and his fellow police officers are violent, cowardly, lying thugs. They hid behind their uniforms, badges and guns and abused their positions of power and public trust. They violated the sanctity of my home by breaking into my apartment in the middle of my night and arrested me without warrant, savagely beat me, fabricated criminal charges against me, and made credible threats which put me in reasonable fear for my life and drove me from my home. In any other context, they would have and should have been charged and convicted with committing perjury, armed home invasion, battery resulting in bodily injury, kidnapping and terrorist threats to commit murder; but when I complained to their supervisors and begged them to intervene, they ignored my pleas for help and condoned their subordinates' illegal and violent misconduct. In their roles as "State Actors," I sue Officer Mark Kordick and the Town of Greenwich for violating my Constitutional Rights.

59.        Officer Kordick entered my home in the middle of the night without a warrant, arrested me in the middle of the night without a warrant, did not have probable cause that I committed any crime, used excessive force in beating me during this unwarranted arrest and in threatening my life with his gun and telling me to "get out of town," and was the complaining witness in a wrongful prosecution alleging crimes that were false and which he knew were false because he fabricated them. Through these acts, he violated my Constitutional Rights, including those guaranteed to me by the 4th, 5th, and 14th Amendments.

60.        Officer Kordick (a) made false and defamatory statements to my neighbors in Greenwich Connecticut that I was a dangerous person and a criminal and also (b) communicated to other jurisdictions false and defamatory statements that I had engaged in criminal conduct which also portrayed me as being mentally ill and also (c) communicated to other jurisdictions false and defamatory statements that I had been convicted of the false charges he himself had made, but which were, merely, false charges which had never led to convictions. Accordingly, Mark Kordick is liable to me under state law diversity principles for defamation.

61.        The Town of Greenwich failed to train, supervise and/or set policy for its police officers, including Officer Mark Kordick. In addition to Officer Kordick's misconduct, several other Greenwich Police Officers were directly involved in injuring me and depriving me of my Constitutional rights. This includes Officer Kordick's two fellow officers who joined him in entering my apartment in the middle of the night without a warrant or probable cause, arrested me in the middle of the nigt without a warrant or probable cause, and used excessive force by beating me during this false arrest. This also includes the many other Greenwich Police Officers

who came to my apartment and terrorized me on earlier nights; and the many other Greenwich Police Officers who followed and harassed me following the night that Officer Kordick arrested me. At least two of Officer Kordick's supervisors, Lt. Keegan, and the Sgt., who was on duty at the desk in the police station on the night I was wrongfully arrested, ignored my repeated pleas to help me and stop Officer Kordick's misconduct. They did not help me and stop the harassment. Rather, they mocked me or were at best indifferent. The Town of Greenwich's failure, to train, supervise, or establish policies, including to stop this harassment, condoned this misconduct so that it escalated. The Town of Greenwich actively participated in my injuries and is liable pursuant to *Monell v. Department of Social Services, 436 U.S. 658 (1978)*. The Town of Greenwich violated my Constitutional Rights, including those guaranteed to me by the 4th, 5th, and 14th Amendments.

62.    In addition to Officer Kordick, several other Town of Greenwich Police Officers made false and defamatory statements to my neighbors in Greenwich Connecticut that I was a dangerous person and a criminal. The Town of Greenwich also communicated to other jurisdictions false and defamatory statements that I had engaged in criminal conduct which also portrayed me as being mentally ill. The Town of Greenwich also communicated to other jurisdictions false and defamatory statements that I had been convicted of the false charges which had never led to convictions. Accordingly, The Town of Greenwich is liable to me under state law diversity principles for defamation.

63.    WHEREFORE, I respectfully pray for judgment against these defendants, jointly and also individually/severally, in the amount, at least, of $2,000,000, plus such further sums as

17

an assessment at trial will show, plus interest, statutory costs and disbursements, and such other and further relief as may be just.

## DECLARATION UNDER PENALTY OF PERJURY

The undersigned declares under penalty of perjury that I am the plaintiff in the above action, that I have read the above complaint and that the information contained in the complaint is true and correct. 28 U.S.C. § 1746; 18 U.S.C. § 1621.

Respectfully Submitted,

Russel Harvey, Plaintiff, *Pro-se*

August 19th, 2017

18