# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

RUSSEL HARVEY,
     Plaintiff,

v.

TOWN OF GREENWICH, et al.,
     Defendants.

No. 3:17-cv-1417 (SRU)

## RULING ON PENDING MOTIONS

Russel Harvey ("Harvey") initiated this 42 U.S.C. § 1983 action pro se against

defendants Town of Greenwich ("Greenwich"), Police Officer Mark Kordick ("Kordick"), and

State's Attorney Steven Weiss ("Weiss"), in which he brings allegations stemming from an

incident in August of 1996. Am. Compl., Doc. No. 11. He alleges that Kordick, among other

non-party Officers, "illegally entered [his] apartment, wrongfully arrested [him], used excessive

force to beat [him,] … threatened [him] with additional bodily injury and death, wrongfully

jailed [him], and through perjurious statements in their police reports and complaints, brought

criminal charges against [him]." *Id.* at ¶ 1. The defendants moved to dismiss Harvey's claims,

which I granted in part. Conf. Memo. and Order, Doc. No. 38. The only claims remaining are:

(1) malicious prosecution against Weiss; (2) false arrest against Kordick; and (3) malicious

prosecution against Kordick.

I denied without prejudice Weiss' original Motion to Dismiss (Doc. No. 19) and directed

Harvey to provide the document to Weiss upon which his claims against Weiss are premised.

Conf. Memo. and Order, Doc. No. 38. After receiving the document, Weiss filed a Renewed

Motion to Dismiss (Doc. No. 40). For the reasons set forth below, Weiss' motion is **granted**.

I also held open Kordick's Motion to Dismiss (Doc. No. 26) and requested supplemental briefing about whether Harvey's claims of false arrest and malicious prosecution were time-barred. Conf. Memo. and Order, Doc. No. 38. Kordick filed a supplemental memorandum in support of his motion to dismiss in which he alleges that Harvey's false arrest claim is time-barred and that he failed to adequately plead his malicious prosecution claim. *See* Supp. Mem. in Supp. Mot. to Dism., Doc. No. 39. For the reasons set forth below, Kordick's Motion to Dismiss (Doc. No. 26) is **granted in part and denied in part**.

Further, Harvey moves to add defendants to the case. *See* Mot. to Add Def., Doc. No. 43. He seeks to add some named defendants, multiple John and Jane Doe defendants, as well as "each and every Town of Greenwich Police Officer employed by the Town of Greenwich in August, 1996." *Id*. at 1, 9. For the reasons set forth below, Harvey's Motion to Add Defendants (Doc. No. 43) is **denied**.

## I.      Background

Harvey alleges the following facts in his Amended Complaint (Doc. No. 11). Harvey moved to Greenwich in February of 1996 from his hometown of Mamaroneck, New York. *Id*. at ¶ 9. When he lived in New York the Police failed to stop an attack against him, and when he spoke out against the police's handling of the situation, he was beaten and detained by the police. *Id*. He filed suit against the department and received a substantial settlement. *Id*. He then moved from Mamaroneck to avoid the harassment by the police that followed his lawsuit, but as soon as he moved to Greenwich, Kordick and other Greenwich officers began harassing him in retaliation for his lawsuit against the Mamaroneck Police. *Id*. at ¶¶ 9, 11-12. Kordick and other Greenwich Police Officers harassed him multiple times in July and August of 1996, both at his home and in public and although Harvey complained to supervisors at the Police Department,

nothing was ever done to stop the harassment. *Id*. at ¶ 15, 18. Further, the Police broke into Harvey's house at one point while he was not home, and on two occasions, August 13 and 19, 1996, police came to his house in the middle of the night to investigate an alleged noise complaint made by one of his neighbors. *Id*. at ¶ 16, 19, 25.

On August 13, Harvey woke up around 4:00 in the morning to find Greenwich Police Officers inside his home, and on August 19, Kordick and others came to his front door but would not leave after Harvey repeatedly asked them to because he was not making any noise and he did not want them to come inside. *Id*. at ¶¶ 16, 19, 25-37, 39-44. Harvey was fearful at the time and Kordick threatened him with a gun. *Id*. at ¶ 40-41, 31. The Officers then left Harvey's home but returned twenty minutes later, pushed open the door, grabbed Harvey and pulled him out of the house. *Id*. at ¶ 45. The Officers "choked … and handcuffed" him, "tossed [him] around like a rag doll," and "threw [him] to the ground," even though Harvey was not resisting and said he would cooperate. *Id*. He "begged them to stop" because he was in pain but the officers "hit [him] with their fists and their flashlights" and kicked and spit on him, and Kordick "held [Harvey] down with the full weight of his body, first with his knee in [Harvey's] back, and then, by laying on top of" him. *Id*. The "beating caused [him] to have great pain, and resulted in contusions, scrapes, pain in [his] back and arm, etc." and required him to go to the emergency room for treatment. *Id*. The officers then "[took] turns going in and out of [his] apartment" without permission. *Id*. at ¶ 46. He "feared for [his] life" and "thought [the officers] were going to kill" him, and Kordick threatened him when he was in the police car on the way to the station. *Id*. at ¶ 45, 47.

Harvey was charged with Disorderly Conduct and Interfering with Officers/Resisting Arrest for the August 19 incident, and Kordick was listed as the "Arresting Officer." *Id*. at ¶ 49.

3

Further, Harvey was given a "Notice of Rights" and "Uniform Arrest Report," and states that "[n]either of these papers, nor any reports that [he] ever received or [saw], remotely satisfie[d] the [Sixth] Amendment Right 'to be informed of the nature and cause of the accusation.'" *Id*. at ¶ 50. Further, Harvey was never made aware "in any way whatsoever … which of the six (6) subsections of the Disorderly Conduct statute [he] was alleged to have committed." *Id*. at ¶ 53. Harvey also states that he could not have committed the crime of Interfering with Officers because "the officers were acting illegally" and Kordick and others "fabricated the charge." *Id*. at ¶ 54-55. He alleges multiple times that the officers "violated [his] Fourth Amendment rights by making an unlawful entry into [his] home without a warrant, to arrest [him] without a warrant in the dead of night, for the (false) allegation that [he] had committed the most trivial of misdemeanors: a noise violation that they did not hear (and which they fabricated)." *Id*. at ¶ 54. When Harvey returned home after being released from jail, his door was open and a "valuable and irreplaceable book was missing," though he does not allege that the police took it. *Id*. at ¶ 56. The Greenwich Post reported on his arrest on Friday, August 23, and Harvey alleges that "all the statements by the police about [his] behavior in the report (as repeated and published by the Greenwich Post), were completely false, malicious, and defamatory." *Id*. at ¶ 58.

When Harvey appeared with counsel in court on August 26, 1996, he entered a not guilty plea and the prosecutor "indicated he was willing to admit that the police acted improperly in entering [his] apartment and arresting [him] in the middle of the night without a warrant and would dismiss" the charges. *Id*. at ¶ 60. Harvey's attorney (unnamed), though, suggested that he sign up for Accelerated Pretrial Rehabilitation, but Harvey did not want to pursue that option. *Id*. Throughout the pendency of Harvey's criminal case, Kordick and others continued to harass him and his attorney told him "it was likely Kordick and the others would follow through on

their threats" and "might even kill" Harvey and encouraged Harvey to move because he, Harvey's lawyer, "didn't want to feel responsible if [Harvey] stayed in Greenwich and the police killed [him]." *Id*. at ¶ 62. Harvey then moved and his attorney appeared on his behalf on a number of court dates. *Id*. at ¶ 65-66.

Harvey states that Weiss "made a terrible decision to prosecute" him and Weiss knew or should have known the following: "the charges were bogus and the police had engaged in misconduct, entered [Harvey's] home and arrested [him] without a warrant or probable cause, lied and fabricated the charges;" "the police were wrong to violate [Harvey's Fourth] Amendment rights by entering [his] apartment in the middle of the night to arrest [him] for something as trivial as making too much noise, even if it were true;" "even if [Harvey] had resisted such an arrest, under those circumstances, it would have been [his] common law right to protect [himself] and [his] home;" and Harvey "had never been arrested, charged, or convicted of any crime." *Id*. at ¶ 69. Harvey acknowledges that Weiss is protected by prosecutorial immunity in his role as a prosecutor, but sues him for malicious prosecution for allegedly signing his name on the charging documents as the "Complaining Witness." *Id*.

Harvey's criminal case was not dismissed until August 20, 2015 because of "the misconduct by the Greenwich Police and the Prosecutor." *Id*. at ¶ 1, 87. While the case was pending, Harvey was subjected to other hardships including an arrest in California, requested by Greenwich for extradition purposes; defamatory statements made to California authorities that led to further harassment; an eight-month incarceration in California; and being told he could not remain in Canada. *Id*. at ¶ 87-93.

In the "Conclusion and Claims" section of his Amended Complaint, Harvey states that he is suing Kordick and Greenwich "[i]n their roles as 'State Actors' … for violating [his]

Constitutional [r]ights." *Id*. at ¶ 95. Harvey alleges that Kordick violated his Fourth, Fifth, and Fourteenth Amendment rights by: (a) entering his home without a warrant; (b) arresting him without a warrant; (c) using excessive force against him; and (d) threatening him. *Id*. at ¶ 96. Further, he alleges that Kordick defamed him to his neighbors and to other jurisdictions, stating that Harvey was a criminal, dangerous, and mentally ill. *Id*. at ¶ 97, 102. Harvey alleges that Greenwich violated his Fourth, Fifth, and Fourteenth Amendment rights because it "failed to train, supervise and/or set policy for its police officers, including" Kordick. *Id*. at ¶ 98. Further, Harvey alleges that Greenwich defamed him by "communicat[ing] to other jurisdictions false and defamatory statements" regarding the alleged charges. *Id*. at ¶ 102. Lastly, Harvey alleges that Weiss violated his Fourth, Fifth, and Fourteenth Amendment rights by maliciously prosecuting him. *Id*. at ¶ 103. Harvey seeks $2,000,000 in damages. *Id*. at ¶ 106.

Weiss moved to dismiss the malicious prosecution claim against him on the grounds of prosecutorial immunity. *See* Weiss Mot. to Dism., Doc. No. 19. Harvey sues Weiss only for his act of signing a charging document as the "Complaining Witness" in which he "complains, deposes, and alleges that he has reason to believe and does believe that [Harvey] committed the two crimes" as charged. Am. Compl., Doc. No. 11 at ¶ 69. Harvey did not submit the form to which he was referring. In a hearing on the Motion to Dismiss on July 17, 2018, I denied Weiss' motion "because Weiss's actions as alleged in the complaint, taken as true, are not entitled to immunity." Conf. Memo. and Order, Doc. No. 38. Further, I directed Harvey to provide Weiss' attorney with the relevant court document signed by Weiss, and stated that "after reviewing the document, [Weiss' attorney] can file an additional motion challenging the claim against Weiss, should he feel that is necessary." *Id*. Harvey provided Weiss' attorney with the operative document, and Weiss filed a Renewed Motion to Dismiss. Weiss Mot. to Dism., Doc. No. 40.

With respect to Greenwich, I dismissed with prejudice all of the claims against it[1] "as each claim was either time-barred by the applicable statute of limitations and/or Harvey failed to state a claim under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978)." Conf. Memo. and Order, Doc. No. 38.

With respect to Kordick, I dismissed with prejudice two of Harvey's claims against him because they were time-barred: Excessive Force (Count Two); and Slander (Count Seven). *Id.* at 2. I held open two claims against Kordick and requested supplemental briefing: False Arrest (Count One); and Malicious Prosecution (Count Three). *Id.* Kordick filed a supplement to his original motion to dismiss (Doc. No. 39), which Harvey has opposed (Doc. No. 51).

Accordingly, the only remaining counts are: Malicious Prosecution against Weiss; False Arrest and Malicious Prosecution against Kordick. Further, Harvey has moved to add defendants to the case. *See* Mot. to Add Def., Doc. No. 43.

## II.     Motions to Dismiss

### A.   Standard of Review

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) is designed "merely to assess the legal feasibility of a complaint, not to assay the weight of evidence which might be offered in support thereof." *Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774, 779 (2d Cir. 1984) (quoting *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980)). When deciding a motion to dismiss pursuant to Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true, draw all reasonable inferences in favor of the plaintiffs, and decide whether it is plausible that plaintiffs have a valid

---

[1] Harvey alleged the following claims against Greenwich: False Arrest (Count Four); Excessive Force (Count Five); Malicious Prosecution (Count Six); Slander (Count Eight); Libel (Count Nine); False Light (Count Ten).

claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007); *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996).

Under *Twombly*, "[f]actual allegations must be enough to raise a right to relief above the speculative level," and assert a cause of action with enough heft to show entitlement to relief and "enough facts to state a claim to relief that is plausible on its face." 550 U.S. at 555, 570; *see also Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). The plausibility standard set forth in *Twombly* and *Iqbal* obligates the plaintiff to "provide the grounds of his entitlement to relief" through more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (quotation marks omitted). Plausibility at the pleading stage is nonetheless distinct from probability, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the claims] is improbable, and . . . recovery is very remote and unlikely." *Id.* at 556 (quotation marks omitted).

When a plaintiff is proceeding pro se, his complaint "must be construed liberally to raise the strongest argument [it] suggests" but nonetheless "must state a plausible claim for relief." *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013) (internal quotation marks omitted); *see also Bamba v. U.S. Dept. of Homeland Sec.*, 533 Fed. Appx. 33, 34 (2d Cir. 2013) (summary order). "The duty to liberally construe a plaintiff's complaint is not the equivalent of a duty to re-write it. . . . When possible, the court should not dismiss an action without leave to amend once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Turner v. Boyle*, 116 F. Supp. 2d 58, 68 (D. Conn. 2015) (citations omitted) (internal quotation marks omitted).

B. <u>Discussion</u>

    1. *Weiss' Renewed Motion to Dismiss (Doc. No. 40)*

Weiss has renewed his original Motion to Dismiss (Doc. No. 19) after receiving a copy of the charging document relied upon by Harvey. Weiss Renewed. Mot. to Dism. ("Renewed Mot. to Dism."), Doc. No. 40. Weiss argues that his motion should be granted because "[a] prosecutor is absolutely immune from liability for the mere submission of an Information in support of a criminal prosecution." *Id*. at 13. Alternatively, Weiss argues that the allegation against him should be dismissed on the basis of qualified immunity. *Id*. at 14.

Malicious prosecution claims are governed by the laws of the state in which the legal proceedings took place and, under Connecticut law, a plaintiff must prove: "(1) a criminal action was instituted by the defendant against the plaintiff; (2) the action was motivated by malice; (3) there was an absence of probable cause to prosecute; and (4) the action terminated favorably for the plaintiff." *Turner v. Boyle*, 116 F. Supp. 3d 58, 75 (D. Conn. 2015). "State prosecutors enjoy absolute immunity from Section 1983 suits for money damages whenever the act is within the scope of their prosecutorial duties." *Id*. at 79; *see also Imbler v. Pachtman*, 424 U.S. 409, 420 (1976). In determining whether absolute immunity applies, "the Second Circuit utilizes a functional approach in which a court must determine whether the function being performed is 'intimately associated with the judicial phase of the criminal process … includ[ing] which determining which offenses and which defendants to charge; initiating a prosecution; presenting a case at trial; evaluating and organizing evidence for presentation at a trial or grand jury; and virtually all acts, regardless of motivation, associated with [the prosecutor's] function as an advocate." *Turner*, 116 F. Supp. 3d at 79 (citations omitted) (internal quotation marks omitted).

"Absolute immunity does not extend, however, to instances in which a prosecutor performs administrative or investigatory functions unrelated to preparation for judicial

proceedings." *Id.*; *see also Van de Kamp v. Goldstein*, 555 U.S. 335, 342 (2009) ("[A]bsolute immunity may not apply when a prosecutor is not acting as an officer of the court, but is instead engaged in other tasks, say, investigative or administrative tasks." (internal quotation marks omitted).). "[A]bsolute immunity does not apply when a prosecutor … acts as a complaining witness in support of a warrant application." *Van de Kamp*, 555 U.S. at 343 (citations omitted) (emphasis added). The Supreme Court has held that Section 1983 "may provide a remedy for [a plaintiff] insofar as [the defendant] performed the function of a complaining witness." *Kalina v. Fletcher*, 522 U.S. 118, 131 (1997); *see also Flagler v. Trainor*, 663 F.3d 543 (2d Cir. 2011) ("[T]he [Supreme] Court has withheld absolute immunity for conduct unrelated to advocacy, such as … acting as a complaining witness."). "[S]worn statements in support of an arrest warrant were not intimately associated with a prosecutor's duty to advocate. Rather, offering sworn statements was an 'act that any competent witness might have performed.'" *Flagler*, 663 F.3d at 548 (*citing Kalina*, 522 U.S. at 129-30). "The prosecutor was acting as a complaining witness, not as an advocate; [t]estifying about facts is the function of the witness, not of the lawyer." *Id*. (holding that prosecutorial immunity does not apply when prosecutor signed a material witness order, rather than an arrest warrant). It is the act of "personally attesting to the truth of the averments" in an arrest warrant that goes beyond a prosecutor's advocacy function. *Kalina*, 522 U.S. at 129; *see also Flagler*, 663 F.3d at 548 n.9.

Prosecutorial duties, undertaken pursuant to a role as "advocate for the State", that "involve actions preliminary to the initiation of a prosecution" even though they may be "apart from the courtroom", are shielded by absolute immunity. *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993) (internal quotation marks omitted). Further, "investigative acts reasonably related to decisions whether or not to begin or carry on a particular criminal prosecution … are shielded by

absolute immunity when done by prosecutors." *Giraldo v. Kessler*, 694 F.3d 161, 166 (2d Cir.

2012). A prosecutor's "activities in connection with the preparation and filing of … charging

documents [including an information] … are protected by absolute immunity." *Kalina v.

Fletcher*, 522 U.S. 118, 129 (1997).

Here, Harvey alleges that Weiss was acting as a complaining witness and, therefore,

absolute prosecutorial immunity does not apply.[2] Weiss argues that the document at issue is the

"standard short-form Information upon which [Harvey's] prosecution was founded." Mem. in

Supp. Weiss Mot. to Dism., Doc. No. 41 at 12; *see also* Ex. A to Mem. in Supp. Weiss Mot. to

Dism., Doc. No. 41 at 18. Weiss also argues that it is not at all clear that he actually signed the

Information, rather than his name just appearing as the prosecutor on file and, further, even if he

did sign the Information, he was acting within his official prosecutorial capacity. *Id.* It does

seem very unclear whether or not Weiss actually signed the document, because his name appears

only as "Prosecutor on Original Disposition" and does not look like a signature. *See* Ex. A,

Mem. in Supp. Weiss Mot. to Dism., Doc. No. 41 at 18. However, taking as true the allegation

that he signed it, the signature is still insufficient to establish that Weiss was acting outside his

role as a prosecutor. Signing an information and initiating a criminal case is precisely the type of

duty to which absolute prosecutorial immunity applies. *See Kalina*, 522 U.S. at 129. Harvey

---

[2] Harvey also argues that Weiss' renewed motion is essentially a Motion for Summary Judgment because of the
addition of the document attached as Exhibit A. Mem. in Opp. Weiss Mot. to Dism., Doc. No. 52 at 2. Where a
document is "integral to [the] complaint" and the complaint "alleges injuries on the basis of" the document, it is
incorporated by reference and, therefore, can be considered on a Motion to Dismiss. *Nicosia v. Amazon.com, Inc.*,
834 F.3d 220, 234 (2d Cir. 2016); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 n.4 (2d Cir. 2002).
Accordingly, the document, referenced multiple times in the amended complaint, is incorporated by reference and
can be considered in the renewed motion to dismiss. *See* Am. Compl., Doc. No. 11 at ¶ 11 (Weiss is being sued for
"signing a document which 'complains, deposes, and alleges that he has reasons to believe and does believe' that
[Harvey] committed crimes"); *id.* at ¶ 59 (same); *Id.* at ¶ 68 (Weiss may have "cavalierly rubber stamped and filed
the complaint in Court"); *id.* at ¶ 69 ("Weiss testified 'on his oath of office' and signed a document which
'complains, deposes, and alleges that he has reason to believe and does believe' that [Harvey] committed" crimes,
and he "maliciously and with evil intent signed his name to the charging documents").

alleges throughout his complaint that Weiss, in signing the document, was a "complaining witness" and "testified on his oath and office that he "complains, deposes, and alleges that he has reasons to believe and does believe that [Harvey] committed crimes." *See, e.g.,* Am. Compl., Doc. No. 11 at ¶¶ 11, 59, 69. Nothing in the Information, the "signing" of which is the sole pertinent allegation, supports that contention. Harvey attempts to argue in his opposition, though, that his allegations really stem from the fact that the Information may not have actually been signed at all and, if that was the case, then it could not have initiated the criminal case against him. He makes no such allegations in his complaint, however, and cannot change the theory of his allegations at this stage.

Accordingly, Weiss is entitled to absolute immunity. His renewed motion to dismiss (Doc. No. 40) is **granted** and the malicious prosecution claim against him is dismissed.[3]

### 2. *Kordick's Motion to Dismiss (Doc. No. 26)*

In his Motion to Dismiss (Doc. No. 26), Kordick moved to dismiss all of the claims against him on the grounds that they were time-barred. I granted the motion with respect to the claims of excessive force and slander, but held open the claims of false arrest and malicious prosecution and requested supplemental briefing regarding when those claims began accruing. Conf. Memo. and Order, Doc. No. 38. Kordick filed a supplemental memorandum in support of his motion to dismiss in which he argues that Harvey's false arrest claim is time-barred, and his malicious prosecution claim is inadequately pled. *See* Supp. Mem. in Supp. Kordick Mot. to Dism. ("Supp. Mem."), Doc. No. 39.

---

[3] Therefore, I need not address Weiss' alternative argument for dismissal, that he is entitled to qualified immunity. Mem. in Supp. Weiss Mot. to Dism., Doc. No. 41 at 16.

a. False Arrest

Kordick argues first that Harvey's false arrest claim is barred by the statute of limitations because the claim began accruing when Harvey entered his not guilty plea on August 26, 1999. Supp. Mem., Doc. No. 39 at 1, 6. As a general matter, section 1983 claims arising in Connecticut are subject to a three-year statute of limitations. *Lounsbury v. Jeffries*, 25 F.3d 131, 133-34 (2d Cir. 1994); *Rogers v. Apicella*, 606 F. Supp. 2d 272, 283 (D. Conn. 2009) (noting that warrantless search and seizure subject to three-year statute of limitations). To prevail on a claim of false arrest, "the plaintiff must prove that his physical liberty has been restrained by the defendant and that the restraint was against his will, that is, that he did not consent to the restraint or acquiesce in it willingly …. The restraint must be accomplished through the exercise of force …. A person is not liable for false [arrest] unless his act is done for the purpose of imposing a confinement, or with knowledge that such confinement will, to a substantial certainty, result from it." *Zainc v. City of Waterbury*, 603 F. Supp. 2d 368, 386 (D. Conn. 2009) (internal quotation marks omitted). Accrual of a cause of action occurs "when the plaintiff has a complete and present cause of action … that is, when the plaintiff can file suit and obtain relief." *Wallace v. Kato*, 549 U.S. 384, 388 (2007); *see also Whitehorn v. Bridgeport Police Dept.*, 2004 WL 1576706, at *2 (D. Conn. July 8, 2004) ("In general, a [Section] 1983 claim accrues when the plaintiff knows or has reason to know of the harm or injury that is the basis of the action." (internal quotation marks omitted)).

"Connecticut law is unsettled as to whether a plaintiff, in order to prove a claim of false arrest, must show that the prosecution terminated in his favor." *Spencer v. Connecticut*, 560 F. Supp. 2d 153, 161-62 (D. Conn. 2008). "Although the Second Circuit in *Roesch v. Otarola*, 980 F. 2d 850, 853-53 (2d Cir. 1992) found that a favorable termination of the underlying proceedings was an element of a false arrest claim in Connecticut, this specific holding of the

*Roesch* decision subsequently has been called into question, *see, e.g., Colon v. Ludemann*, 283 F. Supp. 2d 747, 753-54 (D. Conn. 2003), and has not been expressly adopted by the Connecticut Supreme Court." *Id.*; *see also Zainc*, 603 F. Supp. 2d at 387; *but see Miles v. City of Hartford*, 445 F. App'x 379, 383 (2d Cir. 2011) ("In *Roesch* …, this Court expressly held, invoking Connecticut law, that favorable termination is an element of … false arrest … which is binding on this panel.").

Previously, "[t]he Second Circuit has stated that in some circumstances, a [Section] 1983 claim for false arrest does not accrue until the resulting criminal proceeding has terminated." *Whitehorn v. Bridgeport Police Dept.*, 2004 WL 1576706, at *2 (D. Conn. July 8. 2004); *see also Covington v. City of New York*, 171 F.3d 117, 119 (2d Cir. 1999) (the Second Circuit determined that the accrual date for a claim of false arrest depends on "whether a judgment in [a plaintiff's] favor on the false arrest claim would have undermined the validity of any potential conviction in the criminal proceedings against [him]"). Since then, however, the Supreme Court has held that the "statute of limitations upon a [Section] 1983 claim seeking damages for a false arrest in violation of the Fourth Amendment, where the arrest is followed by criminal proceedings, begins to run at the time the claimant becomes detained pursuant to legal process." *Wallace*, 549 U.S. at 397. The Supreme Court in *Wallace* declined to hold that a claim for false imprisonment began accruing "after the State dropped the charges" against the plaintiff. *Id.* at 390. The rule is different, however, where (unlike here) a plaintiff initiates a civil suit for false arrest before the resolution of the criminal case. *Id.* at 393-94. "If a plaintiff files a false-arrest claim before he has been convicted … it is within the power of the district court … to stay the civil action until the criminal case … is ended…. If the plaintiff is ultimately convicted, and if the stayed civil suit would impugn that conviction, *Heck* [*v. Humphrey*, 512 U.S. 477 (1994)]

will require dismissal[.]" *Id.* (internal citations and quotation marks omitted).  Further, "the *Heck* rule [does not] operate as a toll on the statute of limitations when a criminal conviction that would be impugned by a [section] 1983 action occurs after the accrual of the [section] 1983 action." *Smith v. Campbell*, 782 F.3d 93, 101 (2d Cir. 2015).

Post-*Wallace* and post-*Roesch* cases in this District have held that a plaintiff's false arrest claim begins accruing at the time of arrest, or at the time the plaintiff was otherwise held pursuant to legal process, and do not take into consideration the ultimate disposition of the criminal case.  *See Nowacki v. Town of New Canaan*, 2017 WL 1158239, at *7 (D. Conn. Mar. 28, 2017) (plaintiff's false arrest claims began accruing at the time of his arrest because, as stated in *Wallace*, the claim begins accruing "once the victim becomes held pursuant to [legal] process" (internal quotation marks omitted)); *Spencer,* 560 F. Supp. 2d at 161 (false arrest claims began accruing at time plaintiff was detained pursuant to legal process); *Vilchel v. Connecticut*, 2008 WL 5226369, at *2 (D. Conn. Dec. 11, 2008) ("[P]laintiff was arraigned as of March 27, 2003 … [t]hus plaintiff had until March 27, 2006, at the latest, to file a complaint asserting a claim of false arrest."); *Collin v. Connecticut Judicial Branch*, 2016 WL 6304434, at *2 n.1, (D. Conn. Oct. 26, 2016) (criminal case was terminated unfavorably but, even if it was terminated favorably, plaintiff's claim for false arrest would have been time-barred because it began accruing upon arrest).  Accordingly, a claim for false arrest begins accruing at the time a plaintiff is held pursuant to legal process, regardless of the ultimate disposition of the criminal case and, therefore, Harvey's claim is time-barred.

There is also no basis to toll the accrual of Harvey's false arrest claims because Harvey was never convicted; his charges were dismissed.  *See Spencer v. Connecticut*, 560 F. Supp. at 158 ("[W]hen a judgment in a plaintiff's favor in a civil action would necessarily imply the

invalidity of his criminal conviction, the civil cause of action does not arise until his conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by an authorized tribunal, or called into question by the issuance of a federal habeas corpus writ." (referencing *Heck*, 512 U.S. at 486-87).). Further, equitable tolling is not appropriate because Harvey, who filed his complaint eighteen years after his arrest, has not "otherwise shown extraordinary circumstances to warrant equitable tolling of the limitations period for his false arrest claim." *Johnson v. Teague*, 2014 WL 2525214, at *3 (D. Conn. June 4, 2014); *see also Walker v. Jastremski*, 430 F.3d 560, 564 (2d Cir. 2005) ("We have applied equitable tolling only in rare and exceptional circumstances, where we found that extraordinary circumstances prevented a party from timely performing a required act, and that the party acted with reasonable diligence throughout the period he [sought] to toll." (internal quotation marks and citations omitted)).

Accordingly, Harvey's false arrest claim began accruing when he appeared in court on August 26, 1999, at the latest, and he failed to file suit within the three-year statute of limitations period. Therefore, Kordick's motion to dismiss the false arrest claim is **granted**.

### b. Malicious Prosecution

Kordick argues next that Harvey's malicious prosecution claim should be dismissed because Harvey "did not suffer a deprivation of liberty."[4] Supp. Mem., Doc. No. 39 at 6. "To prevail on a Section 1983 claim of malicious prosecution, the plaintiff 'must show a violation of

---

[4] Kordick alleged in his original motion to dismiss that all of the claims against him were time-barred. To the extent he was raising that argument about the malicious prosecution claim, he has abandoned it, likely because it seems clear that the claim was indeed timely filed. "The statute of limitations does not begin to run on a federal malicious prosecution claim until the claimant obtains a favorable termination." *Gojcaj v. City of Danbury*, 2016 WL 67688, at *6 (D. Conn. 2016); *see also Turner*, 116 F. Supp. 3d at 85 ("A Section 1983 claim for malicious prosecution accrues when criminal proceedings have terminated in the plaintiff's favor."). The charges against Harvey were dismissed on August 20, 2015 and he filed his complaint on August 22, 2017, well within the three-year statute of limitations. *See Lounsbury v. Jeffries*, 25 F.3d 131, 1333-34 (2d Cir. 1994).

his rights under the Fourth Amendment, and must establish the elements of a malicious prosecution claim under state law.'" *Turner*, 116 F. Supp. 3d at 84-85 (quoting *Manganiello v. City of New York*, 612 F.3d 149, 160-61 (2d Cir. 2010)). "In Connecticut, the elements of a malicious prosecution claim are that '(1) the defendant initiated or procured the institution of criminal proceedings against the plaintiff; (2) the criminal proceedings have terminated in favor of the plaintiff; (3) the defendant acted without probable cause; and (4) the defendant acted with malice, primarily for a purpose other than that of bringing an offender to justice.'" *Id.* at 85 (quoting *McHale v. W.B.S. Corp.*, 187 Conn. 444, 447 (1982)); *see also Gojcaj*, 2016 WL 67688 at *5.

"To state a malicious prosecution claim under Section 1983, a plaintiff must also plead that he suffered a post-arraignment liberty restraint sufficient to implicate his Fourth Amendment rights." *Turner*, 116 F. Supp. 3d at 86; *see also Rohman v. New York City Transit Authority*, 215 F.3d 208, 214 (2d Cir. 2000) ("The Fourth Amendment right implicated in a malicious prosecution action is the right to be free of unreasonable seizure of the person—i.e., the right to be free of unreasonable or unwarranted restraints on personal liberty. A plaintiff asserting a Fourth Amendment malicious prosecution claim under [section] 1983 must therefore show some deprivation of liberty consistent with the concept of 'seizure.'" (internal quotation marks omitted)). A plaintiff "must show that the seizure resulted from the initiation or pendency of judicial proceedings." *Murphy v. Lynn*, 118 F.3d 938, 944 (2d Cir. 1997). Where, as here, the plaintiff alleges that he was arrested without a warrant, the "legal process" by which the seizure was effected must have been a "*post-arraignment* deprivation of liberty." *Singer v. Fulton County Sheriff*, 63 F.3d 110, 117 (2d Cir. 1995) (emphasis added) (distinguishing from arrest subject to a warrant, in which case the arrest itself is sufficient to establish a seizure).

The Second Circuit has held that having to return to court on multiple occasions and having to remain in the state constituted sufficient post-arraignment liberty restraints for purposes of malicious prosecution. *Rohman,* 215 F.3d at 216; *see also Murphy*, 118 F.3d at 945-46 (restrictions on out-of-state travel for an arraigned defendant and his five required appearances in court amount to seizures for Fourth Amendment purposes); *Rutigliano v. City of New York*, 326 F. App'x 5, 9 (2d Cir. 2009) (summary order) (plaintiff was released "within minutes of the beginning of his arraignment" and, therefore, failed to plead facts indicating a "sufficient post-arraignment liberty restraint"); *Jocks v. Tavernier*, 316 F.3d 128, 136 (2d Cir. 2003) ("the requirements of attending criminal proceedings and obeying the conditions of bail suffice" to establish a post-arraignment seizure). Further, the Second Circuit has, at least implicitly, recognized that bail set at arraignment may rise to a malicious prosecution seizure. *See Singer*, 63 F.3d at 117 (declining to decide whether there was a seizure, noting that the record revealed no factual findings regarding whether the plaintiff was required to post bail); *Leone v. Creighton*, 948 F. Supp. 192, 195 (E.D.N.Y. 1996) (noting that the Second Circuit, in *Singer*, "implicitly stated, in dicta, that post-arraignment release without bail does not implicate a constitutional liberty deprivation").

Here, many of Harvey's allegations do not constitute liberty deprivations for purposes of malicious prosecution. Harvey's allegations that he was arrested, detained briefly (pre-arraignment) on $250 bail, and given two misdemeanor summonses are insufficient to establish a post-arraignment liberty restraint. *Faruki v. City of New York*, 517 F. App'x 1, 2 (2d Cir. 2013) ("[A] pre-arraignment, non-felony summons requiring no more than a later court appearance does not constitute a Fourth Amendment seizure."). Further, he concedes that he was released at his arraignment and that he was "under absolutely no order not to leave the state" and he did

indeed move to California while his case was pending. *Id*. at ¶¶ 65-66. He further concedes that the prosecutor and judge agreed that he did not have to appear personally in court and, in fact, his lawyer appeared on his behalf in four court appearances in 1996 and 1997. Am. Compl., Doc. No. 11 at ¶ 61. However, Harvey does allege that at some point, and perhaps on the basis of his attorney's motion to withdraw, his bond in Connecticut was increased to $5,000 and the judge issued a capias to compel his appearance at the next court date. *Id*. at ¶ 86. Harvey further alleges that Greenwich Police contacted Santa Monica, California and asked that Harvey be held for extradition, at which point he was jailed for 36 hours and held on $5,000 bail. *Id*. at ¶ 87.

Kordick argues that the bond increase, the capias, and Harvey being held in California are insufficient to establish a liberty restraint for purposes of malicious prosecution because those all stemmed from a "failure to appear in court in 1997" and were, therefore, "separate and distinct occurrence[s] from the initial 'legal process.'" Supp. Mem., Doc. No. 39 at 10 n.4. Kordick argues that in determining whether there was a liberty deprivation, "the court reviews the restrictions imposed by the court *at the time of the arraignment*." *Id*. (emphasis added). Kordick appears to be applying too narrow a test, however, because the Second Circuit has held that a plaintiff "must show that the seizure resulted from the initiation *or pendency of* judicial proceedings." *Murphy*, 118 F.3d at 944 (emphasis added). Although there is little guidance about what constitutes a seizure resulting from the pendency of the proceeding, it is clear from Harvey's allegations, taken as true, that the adverse effects he suffered in California were direct consequences of the criminal case in Connecticut. Harvey alleges that his increased bond in Connecticut and his detention and bail in California all stemmed from the underlying criminal case, for which he was maliciously prosecuted and, therefore, the restraints resulted from the pendency of the judicial proceedings.

At this stage in the proceedings, and given Harvey's pro se status, he has sufficiently alleged a seizure for purposes of his malicious prosecution claim. Accordingly, Kordick's motion to dismiss that claim is **denied**.

III. **Harvey's Motion to Add Defendants (Doc. No. 43)**

Harvey has moved to add defendants to the case. *See* Mot. to Add Def., Doc. No. 43. He seeks to add some named defendants, multiple John and Jane Doe defendants, as well as "each and every Town of Greenwich Police Officer employed by the Town of Greenwich in August, 1996." *Id.* at 1, 9.

A. Standard of Review

Courts construe motions to add defendants as a motion to amend the complaint pursuant to Fed. R. Civ. P. 15(a). *See Makas v. New York State Dept. of Motor Vehicles*, 1998 WL 146251, at *4 (N.D.N.Y. Mar. 23, 1998). Rule 15(a)(2) provides that after a responsive pleading has been filed, "a party may amend its pleading only with the opposing party's written consent or with the court's leave." Fed. R. Civ. P. 15(a)(2). Further, the rule provides that "[t]he court should freely give leave when justice so requires." *Id.* Courts are especially lenient with pro se plaintiffs, "who are freely granted the opportunity to amend." *Makas*, 1998 WL 146251, at *4 (referencing *Satchell v. Dilworth*, 745 F.2d 781, 785 (2d Cir. 1984)). "However, a court may deny a motion to amend where the amendment would be futile in that the complaint could not withstand a motion to dismiss." *Id.* (referencing *Koster v. Modification Systems, Inc.*, 731 F.2d 1014 (2d Cir. 1984)); *see also Pinkston v. Connecticut*, 2010 WL 1268043, at *1 (D. Conn. Mar. 29, 2010) (denying pro se motion to add defendants because claims against them were likely time-barred and, therefore, would not survive a motion to dismiss).

B. Discussion

Kordick argues that the amendment is untimely because the relation-back doctrine does not apply, because Harvey does not seek to change the defendants due to a mistake concerning the proper party's identity, but seeks to add new defendants. Opp. to Mot. to Add Def., Doc. No. 57 at 4-6. "If a complaint is amended to include an additional defendant after the statute of limitations has run, the amended complaint is not time barred if it relates back to a timely filed complaint." *VKK Corp. v. National Football League*, 244 F.3d 114, 128 (2d Cir. 2001) (internal quotation marks omitted); *see* Fed. R. Civ. P. 15(c)(1)(C) (an amendment to a pleading relates back to the date of the original pleading when "the amendment changes the party or the naming of the party against whom a claim is asserted … [because of] a mistake concerning the proper party's identity").

A plaintiff seeking to amend a complaint that names a new party must meet three requirements in order for the new complaint to relate back to the original timely complaint: (1) "both complaints must arise out of the same conduct, transaction, or occurrence"; (2) "the additional defendant must have been omitted from the original complaint by mistake"; and (3) "the additional defendant must not be prejudiced by the delay." *VKK Corp.*, 244 F.3d at 128. "[T]he requirements of Rule 15 are not satisfied when the original failure to name the prospective defendant in the original complaint was the result of a fully informed decision as opposed to a mistake concerning the proper defendant's identity." *Precision Associates Inc. v. Panalpina World Transport (Holding) Ltd.*, 2015 WL 13650032, at *9 (E.D.N.Y. June 24, 2015).

Here, Harvey very plainly concedes that he "would have named [the proposed] Defendants and made these claims against them earlier" but made a "practical" decision to proceed against the Town of Greenwich. Mot. to Add Def., Doc. No. 43 at 2. Further, Harvey states in his motion that he referenced, either by name or otherwise, each of the proposed new

defendants in his Amended Complaint. *See id.* at 3-15 (stating "as I have detailed in my First Amended Complaint" for almost every new defendant; and, where that direct quote is not used, directs the court to the portion of the Amended Complaint in which that proposed defendant is referenced). Accordingly, Harvey cannot allege that he was mistaken in his naming of the defendants, and the relation back doctrine does not apply to his proposed amendment.[5] Harvey's Motion to Add Defendants (Doc. No. 43) is untimely and, therefore, **denied**.

## IV. Conclusion

For the foregoing reasons, Weiss' Renewed Motion to Dismiss (Doc. No. 40) is **granted**; Kordick's Motion to Dismiss (Doc. No. 26) is **granted in part and denied in part**; and Harvey's Motion to Add Defendants (Doc. No. 43) is **denied**. The only remaining claim is Harvey's Malicious Prosecution claim against Kordick, and the clerk is directed to terminate Steven Weiss as a defendant.

So ordered.

Dated at Bridgeport, Connecticut, this 31st day of March 2019.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge

---

[5] Because I have determined that the relation back doctrine does not apply, I need not address Kordick's alternative argument that adding the proposed defendants would be futile, because the claims would be barred by the applicable statute of limitations. Opp. to Mot. to Add Def., Doc. No. 57 at 6.