## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

RUSSEL HARVEY,
   Plaintiff,

   v.

TOWN OF GREENWICH, et al.,
   Defendants.

No. 3:17-cv-1417 (SRU)

## <u>ORDER</u>

In this case, Russel Harvey asserts several claims under 42 U.S.C. § 1983 against the Town of Greenwich, Steven G. Weiss, and Mark Kordick regarding an incident that occurred in August 1996. *See* Am. Compl., Doc. No. 11. In July 2018, I dismissed several of Harvey's claims. *See* Order, Doc. No. 38. And in March 2019, I dismissed several more. *See* Order, Doc. No. 61. Since March 2019, the only claim left in the case has been Harvey's malicious prosecution claim against Kordick. *See id.* at 22. In the over two years since then, discovery has ground to a halt. This Order deals with several issues that have arisen in discovery, clarifies the parties' respective discovery burdens moving forward, and attempts to chart a path for the just and efficient resolution of this litigation.

## I.  Background

In March 2019, I denied Kordick's motion to dismiss Harvey's malicious prosecution claim. *See* Order, Doc. No. 61, at 16–20. I explained that to prevail on his claim for malicious prosecution, Harvey needed to establish that he "suffered a post-arraignment liberty restraint sufficient to implicate his Fourth Amendment rights." *Turner v. Boyle*, 116 F. Supp. 3d 58, 85 (D. Conn. 2015); *see also Rohman v. New York City Transit Auth.*, 215 F.3d 208, 215 (2d Cir. 2000) ("In order to allege a cause of action for malicious prosecution under § 1983, [plaintiff]

must assert . . . that there was [] a sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights.") (cleaned up).  Liberally construing Harvey's complaint, I held that Harvey had "sufficiently alleged a seizure for purposes of his malicious prosecution claim" based on his allegations that:

(1) A Connecticut state court judge increased Harvey's bond in Connecticut to $5,000 and issued a capias to compel Harvey's appearance at a subsequent court date; and

(2) Greenwich Police contacted authorities in Santa Monica, California and asked that Harvey be held for extradition, at which point Harvey was jailed for 36 hours and held on $5,000 bail.

*See* Order, Doc. No. 61, at 18–20; *see also* Am. Compl., Doc. No. 11, at ¶¶ 86–87.

Over the past year, I have held several telephonic status conferences to address discovery issues.[1]  Status conferences in December 2020 and March 2021 were precipitated by motions to compel filed by Kordick.  *See* Mots. to Compel, Doc. Nos. 82, 88.  Kordick raised several purported deficiencies with Harvey's production, including that Harvey refused to respond to interrogatories and requests for production regarding the nature of his 1996 detention in California.  *See* Conf. Mems. and Orders, Doc. No. 86, 98.  In general, Harvey claimed that that information was private.  *See* Harvey's Opp'n, Doc. No. 95.

Following the March 2021 status conference, I issued several relevant discovery orders. First, I ordered that, by May 31, 2021, Harvey needed to produce "all relevant documents within his possession, custody, or control regarding the case or cases brought against him in California that are described in his amended complaint (¶¶ 87–92)."  Conf. Mem. and Order, Doc. No. 98, at 1.  I also ordered that, by July 1, 2021, Harvey needed to produce:

- "relevant documents regarding those California case(s) that are not currently within his possession, custody, or control because they are sealed court records.  Harvey

---

[1]      *See* Min. Entry, Doc. No. 71 (June 15, 2020); Min. Entry, Doc. No. 85 (December 2, 2020); Min. Entry, Doc. No. 97 (March 30, 2021).

must request that the records be unsealed by the California courts so that he can produce them in this litigation.";

- "all relevant recordings of Mark Kordick within his possession, custody, or control.";

- "all relevant recordings of incidents involving police officers at his home in 1996 and any and all transcripts of such recordings within his possession, custody, or control.";

- "the photographs in his possession, custody, or control that are referenced in paragraph 56 of the amended complaint, which apparently depict his injuries."; and

- "any relevant record or tangible item that he claims supports his claim for damages in this action."

*Id.* at 1–2.

On June 3, Kordick made a motion to compel Harvey to comply with my above-referenced orders because Harvey had "failed to produce any of the items . . . by the deadline of May 31, 2021." Mot. to Compel, Doc. No. 100, at 1. (Apparently, Kordick wrongly believed that the deadline for all those productions was May 31.) On June 8, I granted Kordick's motion with respect to the production that was due by May 31 and ordered Harvey, by June 29, to produce "all relevant documents within his possession, custody, or control regarding the case or cases brought against him in California that are described in his amended complaint." Order, Doc. No. 102. I warned that if Harvey did not comply with my order, I would "dismiss this case with prejudice." *Id.*

June 29 came and went with no filings by either party. So, I instructed the parties to file status reports by July 13 regarding whether Harvey had complied with my order. *See* Order, Doc. No. 105. On July 13, both parties filed status reports. *See* Kordick's Status Reports, Doc. Nos. 106 and 107 (sealed); Harvey's Status Report, Doc. No. 110. Those status reports indicate that, on June 29, Harvey produced 1,400 pages of electronic discovery regarding "the case or

cases brought against him in California that are described in his amended complaint (¶¶ 87–92)." Still, according to Kordick, Harvey's production of those records was deficient for several reasons (discussed below). In addition, the parties' status reports indicate that Harvey has not produced several of the other items that I ordered him to produce. The parties' status reports also outline a dispute regarding the manner of Harvey's deposition.[2] I address each issue in turn.

## II.   Discussion

The following discussion addresses and resolves the discovery issues currently pending in this action. To the extent that the following discovery orders differ in any respect from the discovery orders I have already entered, the following discovery orders govern.

### A.   California Court Records

Following the March 2021 status conference, I ordered Harvey to produce two different classes of documents regarding California court records relating to him. The first class of documents was "all relevant documents within his possession, custody, or control regarding the case or cases brought against him in California that are described in his amended complaint (¶¶ 87–92)." Conf. Mem. and Order, Doc. No. 98, at 1. The second class of documents was "relevant documents regarding those California case(s) that are not currently within his possession, custody, or control because they are sealed court records." *Id.* I discuss those two obligations separately.

#### 1.   Documents within Harvey's Possession, Custody, or Control

---

[2]      The parties also submitted two filings after their status reports. On July 15, Kordick filed an objection to Harvey's status report insofar as it was actually a "motion to censure" defense counsel, Attorney McPherson. *See* Obj., Doc. No. 111. Attorney McPherson claims that he has "at all times acted professionally toward [Harvey] even in many instances when [Harvey] was not acting professionally." *Id.* at 3. Attorney McPherson attached numerous communications between him and Harvey to substantiate his claim. *See* Emails, Exs. A–E, Doc. No. 111, at 7–29.
    On July 19, Harvey filed an "addendum" to his status report. *See* Harvey's Addendum, Doc. No. 112. In that addendum, Harvey reiterates that he has complied with my order directing him to produce "all relevant documents within his possession, custody, or control regarding the case or cases brought against him in California that are described in his amended complaint (¶¶ 87–92)." Conf. Mem. and Order, Doc. No. 98, at 1.

The parties do not dispute that Harvey produced 1,400 pages of "relevant documents within his possession, custody, or control regarding the case or cases brought against him in California that are described in his amended complaint (¶¶ 87–92)."  Conf. Mem. and Order, Doc. No. 98, at 1; *see also* Kordick's Status Report, Doc. No. 106, at 1; Harvey's Status Report, Doc. No. 110, at 2.  According to Harvey, he has thus fully complied with my relevant order. *See* Harvey's Addendum, Doc. No. 112.  According to Kordick, Harvey's production was inadequate because (1) Harvey "appears to have only produced documents that have been in his possession for many years if not decades," and (2) the documents "include transcripts of court proceedings which are missing pages and appear to have been altered by deleting lines of transcripts and making certain lines of transcripts illegible."  Kordick's Status Report, Doc. No. 106, at 1.

I largely agree with Harvey.  Kordick's first complaint is irrelevant.  Even if the documents that Harvey produced have been in Harvey's possession for a long time, so long as Harvey has produced "all relevant documents within his possession, custody, or control regarding the case or cases brought against him in California that are described in his amended complaint (¶¶ 87–92)," he has complied with my order.  However, Harvey is reminded that he is under a *continuing obligation* to produce those documents.  That means that if Harvey discovers or finds any other relevant documents regarding the case or cases brought against him in California that are described in his amended complaint—at any point during the pendency of this case—*he must produce them*.

Kordick's second complaint also appears meritless.  I have reviewed the example transcripts that Kordick submitted under seal.  *See* Transcripts, Ex. A to Kordick's Status Report, Doc. No. 107-1 (sealed).  Although some lines are largely illegible, in my view the illegibility

likely owes to scanning or faxing failures rather than Harvey's intentional manipulation.  *See* Harvey's Status Report, Doc. No. 110, at 5.  However, if Harvey *has* manipulated the transcripts in any way, he is ordered immediately to produce the non-manipulated transcripts.

With the above caveats, Harvey has complied with my order to produce "all relevant documents within his possession, custody, or control regarding the case or cases brought against him in California that are described in his amended complaint (¶¶ 87–92)."

2.      Sealed Records

As described above, following the March 2021 status conference, I ordered Harvey to "produce relevant documents regarding" the California cases referenced in his amended complaint "that are not currently within his possession, custody, or control because they are sealed court records."  Conf. Mem. and Order, Doc. No. 98, at 1.  I further wrote that "Harvey must request that the records be unsealed by the California courts so that he can produce them in this litigation."  *Id.*

Although Harvey claims that he has complied with my order, *see* Harvey's Status Report, Doc. No. 110, at 2, it appears to me that he has not.  In fact, the parties' recent status reports make clear that Harvey actively *sought to seal relevant records* in fall 2020, which was during the pendency of this litigation.  Indeed, Harvey admits that, in fall 2020, he made two requests to seal his arrest and related records in two separate cases in the Superior Court of California County of Los Angeles.  *See* Mots. to Seal, Ex. B to Kordick's Status Report, Doc. No. 107-2 (sealed); *see also* Harvey's Status Report, Doc. No. 110, at 5–6 (confirming the requests).  Those motions to seal were subsequently granted.

In California, "[a] person who has suffered an arrest that did not result in a conviction may petition the court to have his or her arrest and related records sealed."  Cal. Penal Code §

851.91(a).  Once "the court grants a petition pursuant to this section, the court shall . . . [i]ssue a written ruling . . . that states," in relevant part, "[t]he record of arrest has been sealed as to petitioner, the arrest is deemed not to have occurred, the petitioner may answer any question relating to the sealed arrest accordingly, and the petitioner is released from all penalties and disabilities resulting from the arrest, except as provided in Section 851.92. . . ."  *Id.* § 851.91(e).  Pursuant to Section 851.92, "[a]rrest records, police investigative reports, and court records that are sealed under this section shall not be disclosed to any person or entity except the person whose arrest was sealed or a criminal justice agency."  *Id.* § 851.92(b)(5).  Thus, an individual who petitioned the court to have his arrest and related records sealed under Section 851.91 is one of only two entities that may obtain those now-sealed court records (the other being a "criminal justice agency").  Because Kordick is not a "criminal justice agency," as defined by the statute, *see id.* § 851.92(d)(4), Kordick cannot obtain the records that were sealed at Harvey's request.

**Harvey must obtain and then produce the court records that were sealed at his request**.  California state law allows him to do so.  And he must do so in this case.  Although Harvey has repeatedly resisted producing those records based on his view that they are private,[3] I have explained that, in the context of this case, they are *not* private because he has put them at issue.  As described above, one of the ways in which Harvey might prove the "post-arraignment deprivation of liberty" element of his malicious prosecution claim against Kordick regards his 1996 detention in California.  If Harvey intends to rely on that detention to satisfy an element of his malicious prosecution claim, fairness dictates that Kordick be allowed to challenge Harvey's

---

[3]      *See, e.g.*, Harvey's Opp'n, Doc. No. 95, at 5–6 ("Considering the consequences to me and my privacy rights . . . protected by California's explicitly clear sealing statute, this issue should not be treated cavalierly."); Harvey's Status Report, Doc. No. 110, at 2 (Harvey claiming that he "do[es] not understand how sealed records from any events which by statute . . . were legally 'deemed not to have occured' [*sic*] could be considered 'relevant'").

claim.  Courts in analogous circumstances frequently hold that, where a party puts at issue records that may otherwise be protected from dissemination by law, that party waives those protections.  *See, e.g.*, *Taylor v. City of New York*, 2020 WL 6559412, at *4 (S.D.N.Y. Nov. 9, 2020) ("[C]ourts in this District regularly order the production of criminal records sealed pursuant to [New York law] in Section 1983 false arrest cases, reasoning that prior sealed arrests may be relevant to emotional damages because a person who has previously been incarcerated may suffer less damage as a result of subsequent wrongful incarceration than a person incarcerated for the first time.") (cleaned up); *Barajas v. Abbott Labs., Inc.*, 2018 WL 4231937, at *2 (N.D. Cal. Sept. 6, 2018) (noting that although California law protected patient's confidential medical records, those protections "may be waived, however, where a particular physical or mental injury has been put at issue in litigation"); *Green v. Montgomery*, 43 F. Supp. 2d 239, 244 (E.D.N.Y. 1999) (holding that, although New York law provides for "the mandatory sealing of records relating to the arrest and prosecution of an individual upon the termination of a criminal proceeding in favor of the accused," "where a party puts into issue in a civil action elements common both to the civil action and to a criminal prosecution, that party waives the privilege") (cleaned up).

Thus, with respect to the California court records that were sealed at Harvey's request, I order that Harvey must **obtain those records and produce them by October 22, 2021**.  If Harvey has petitioned California state courts to seal any other records that might be relevant to his 1996 detention in California, Harvey must also obtain and produce those records by **October 22, 2021**.  Alternatively, Harvey may file a notice on the docket indicating that he will not rely on any post-arraignment deprivation of liberty in California to prove his malicious prosecution

8

claim.  In that event, Harvey need not produce the records to Kordick because they would no longer be relevant.

B.   Records in Storage

Following our March 2021 status conference, I ordered that Harvey must produce several recordings, transcripts, and photographs.  *See* Conf. Mem. and Order, Doc. No. 98, at 1.  Those are:  (1) all relevant recordings of Mark Kordick within Harvey's possession, custody, or control; (2) all relevant recordings of incidents involving police officers at Harvey's home in 1996 and any and all transcripts of such recordings within Harvey's possession, custody, or control; and (3) the photographs referenced in paragraph 56 of the amended complaint which are within Harvey's possession, custody, or control.  Harvey has not produced any of those recordings, transcripts, or photographs because they are "in storage, in another State, and I cannot yet retrieve them due to the COVID-19 Pandemic."  Harvey's Status Report, Doc. No. 110, at 6; *see also* Harvey's Opp'n, Doc. No. 116, at 4–6.  The COVID-19 pandemic has subsided enough that Harvey now can—and must—travel to that storage unit to retrieve the relevant materials and produce them.  Harvey must make that production by **October 22, 2021**.

C.   Deposition

In his status report, Kordick explains that, although he properly noticed Harvey's deposition to take place in-person in Connecticut on June 17, 2021, Harvey "failed to appear" and "has communicated . . . that [he] will not appear for an in-person deposition."  Kordick's Status Report, Doc. No. 106, at 2; *see also* Mot. to Dismiss, Doc. No. 113; Mem. in Supp. Mot. to Dismiss, Doc. No. 114.[4]  Harvey appears to confirm that he will refuse to attend an in-person

---

[4]     In a motion to dismiss filed on July 28, 2021, Kordick asks me to "dismiss Plaintiff's case with prejudice because Plaintiff failed to appear for his own properly noticed deposition."  Mem. in Supp. Mot. to Dismiss, Doc. No. 114, at 2.  Pursuant to Rule 37(d), a court "may, on motion, order sanctions" for a party's failure to attend its own deposition, and that sanction may include dismissal with prejudice.  *See* Fed. R. Civ. P. 37(d).  Again, though,

deposition because of the dangers of COVID-19; but Harvey indicates that he would readily participate in a deposition by Zoom. *See* Harvey's Status Report, Doc. No. 110, at 7–8; Harvey's Opp'n, Doc. No. 116, at 2–4.

Pursuant to Rule 30(b)(4), "the court may on motion order . . . that a deposition be taken by telephone or other remote means." Fed. R. Civ. P. 30(b)(4). "Since Rule 30(b)(4) does not specify the standards to be considered in determining whether to grant a request for a remote deposition, the decision to grant or deny such an application is left to the discretion of the Court, which must balance claims of prejudice and those of hardship and conduct a careful weighing of the relevant facts." *Rouviere v. DePuy Orthopaedics, Inc.*, 471 F. Supp. 3d 571, 574 (S.D.N.Y. 2020) (cleaned up). Rather than construing Harvey's status report as a motion for an order directing that his deposition take place via Zoom, I will reserve ruling on the issue. Instead, I order the parties to meet and confer—by *phone*, rather than by e-mail—and to report back to me by **September 6, 2021** regarding whether they have agreed on a manner for Harvey's deposition. If the parties have not agreed, the parties may submit simultaneous briefs (not to exceed three single-spaced pages each) by **September 9, 2021 at 5 p.m.** setting forth their positions on the issue. I will rule on the issue promptly. No matter the manner of deposition, Harvey's deposition must occur before **November 8, 2021**.

D.     Documents Supporting Claim for Damages

Following the March 2021 status conference, I ordered Harvey to produce "any relevant record or tangible item that he claims supports his claim for damages in this action." Conf.

---

"[t]he imposition of sanctions under Rule 37(d) 'is within the discretion of the district court.'" *Davis v. Hartford Pub. Schools*, 2007 WL 4460222, at *2 (D. Conn. Dec. 14, 2007) (quoting *Bobal v. Rensselaer Polytechnic Inst.*, 916 F.2d 759, 765 (2d Cir. 1990)). I exercise my discretion not to sanction Harvey, but, instead, to order the parties to meet and confer regarding this issue, as described in the accompanying text. Thus, I **deny** Kordick's motion to dismiss, doc. no. 113.

Mem. and Order, Doc. No. 98, at 2.  According to Kordick, Harvey has not yet made that

production.  *See* Kordick's Status Report, Doc. No. 106, at 2.  Harvey claims that he has

complied with my order by producing "work samples" and a "nine page detailed answer"

regarding how the malicious prosecution alleged in this case has harmed his career.  Harvey's

Status Report, Doc. No. 110, at 6–7.  Based on the information before me, I conclude that

Harvey has complied with my order.  If Kordick seeks any further *particular* documents, I grant

Kordick leave to file an additional interrogatory or request for production regarding those

documents.

      E.      <u>Potential Sanctions for Non-Compliance</u>

Although this case is not particularly complex—there is just one claim against one

defendant remaining—it has not moved forward in any appreciable manner since March 2019.

That stagnation is detrimental both to the parties and to the court.  Harvey asserts that his

constitutional rights were violated, and he has a significant interest in a speedy and just

determination of his claim and in having his day in court.  Kordick denies that he violated

Harvey's constitutional rights, and he has a significant interest in attempting to address the claim

levelled against him.  *See Peters v. Dep't of Corr. of New York City*, 306 F.R.D. 147, 149

(S.D.N.Y. 2015) (dismissing *pro se* plaintiff's section 1983 action, in part, because "the

remaining defendant in the case has had the threat of a possible judgment hanging over him for

more than three years with no opportunity to defend and seek an end to the litigation").  And I

have an obligation to move this case along so that a "just, speedy, and inexpensive

determination" of this action can be reached.  Fed. R. Civ. P. 1.

Discovery will close in this matter on **November 8, 2021**.  I cannot currently conceive of

any good reason that would warrant extending that deadline.  "If a party 'fails to obey an order to

11

provide or permit discovery,' a district court may sanction the transgressing party in numerous ways of varying severity, up to and including dismissing the action." *Yukos Capital S.A.R.L. v. Feldman*, 977 F.3d 216, 234 (2d Cir. 2020) (quoting Fed. R. Civ. P. 37(b)(2)(A)). Because this case has stagnated badly, I warn the parties that if any party fails to comply with any of my discovery orders, recapped below, I will very likely impose sanctions on that party for his non-compliance.[5]

## III.    Conclusion

Discovery will close in this action on **November 8, 2021**. Dispositive motions are due on **December 6, 2021**.[6] What follows is a summary of the operative discovery orders in this case, as explained above:

(1) Harvey has complied with my order directing him to produce all relevant documents within his possession, custody, or control regarding the case or cases brought against him in California that are described in his amended complaint (¶¶ 87–92).

    a. However, if at any time during the pendency of this case Harvey discovers or finds any other documents relating to those California cases, *he must produce them*.

    b. Further, if Harvey has manipulated the transcripts that he produced, he is ordered immediately to produce the non-manipulated transcripts.

(2) By **October 22, 2021**, Harvey must obtain and produce the California state court and arrest records that were sealed at his request in fall 2020.

---

[5]    Kordick asks me to dismiss this case as a sanction pursuant to Rule 37(b) because "Plaintiff has repeatedly failed to comply with this Court's clear discovery orders." Kordick's Mem. in Supp. Mot. to Dismiss, Doc. No. 109, at 3. Likewise, Harvey asks that I "censure Mr. McPherson" for purportedly lying about Harvey's alleged non-compliance. *See* Harvey's Status Report, Doc. No. 110, at 4, 14. However, "[t]he imposition of sanctions under Rule 37 is within the discretion of the district court." *Tourmaline Partners, LLC v. Monaco*, 2014 WL 4810253, at *5 (D. Conn. Sept. 23, 2014) (quoting *John B. Hull, Inc. v. Waterbury Petroleum Prods., Inc.*, 845 F.2d 1172, 1176 (2d Cir. 1988)). Similarly, whether to impose sanctions pursuant to my inherent power is a decision within my discretion that I should exercise with restraint. *See Telebrands Corp. v. Marc Glassman, Inc.*, 2012 WL 1050018, at *4 (D. Conn. Mar. 28, 2012). I exercise my discretion not to sanction either Harvey or Attorney McPherson at this time. Thus, I **deny** Kordick's motion to dismiss, doc. no. 108. As described above, though, both parties are on notice that I will very likely impose sanctions upon any party who does not comply with my discovery orders moving forward.

[6]    Because I extend the discovery and dispositive motions deadlines as described above, I **deny as moot** Kordick's motion for a modification of the current scheduling order, doc. no. 115.

    a.  Alternatively, Harvey may file a notice on the docket indicating that he will not rely on any post-arraignment deprivation of liberty in California to prove his malicious prosecution claim.

    b.  If Harvey has petitioned California state courts to seal any other records that might be relevant to his 1996 detention in California, Harvey must also obtain and produce those records by **October 22, 2021**.

(3) By **October 22, 2021**, Harvey must produce the following items, which Harvey indicates are in his possession, custody, or control in storage in a different State:

    a.  All relevant recordings of Mark Kordick;

    b.  All relevant recordings of incidents involving police officers at Harvey's home in 1996 and any and all transcripts of such recordings; and

    c.  The photographs referenced in paragraph 56 of the amended complaint, which apparently depict Harvey's injuries.

(4) By **November 8, 2021**, Harvey's deposition must be completed.

    a.  By **September 6, 2021**, the parties shall meet and confer—by *phone*, rather than by e-mail—and report back regarding whether they have agreed how to conduct Harvey's deposition.

    b.  If the parties cannot agree, then by **September 9, 2021 at 5 p.m.**, the parties may submit simultaneous briefs (not to exceed three single-spaced pages each) setting forth their position on that question.

So ordered.

Dated at Bridgeport, Connecticut, this 23d day of August 2021.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge