UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| RUSSEL HARVEY,<br>    Plaintiff,<br><br>    v.<br><br>TOWN OF GREENWICH, et al.,<br>    Defendants. | No. 3:17-cv-1417 (SRU) |

# ORDER

Nearly five years ago, Russel Harvey ("Harvey") commenced this lawsuit against several Defendants—Police Officer Mark Kordick ("Kordick"), the Town of Greenwich, and State's Attorney Steven Weiss—for conduct that allegedly occurred over two decades ago. Principally, Harvey alleges that Kordick and other officers, "illegally entered [his] apartment, wrongfully arrested [him], used excessive force to beat [him], … threatened [him] with additional bodily injury and death, wrongfully jailed [him], and through perjurious statements in their police [reports and complaints], brought criminal charges against [him]." Am. Compl., Doc. No. 11, at ¶ 1.

Kordick, the only remaining Defendant, now moves to dismiss the case, doc. nos. 130, 134, due to Harvey's failure to comply with several of my orders directing Harvey to produce all outstanding discovery.

For the reasons stated below, Kordick's motion to dismiss, doc. no. 130, is **granted**.

## I.    BACKGROUND

### A.  Factual Allegations

Nearly thirty years ago, Harvey moved to Greenwich, Connecticut from his hometown of Mamaroneck, New York. *Id.* at ¶ 9. The relocation was precipitated by a legal battle between

1

Harvey and the Mamaroneck Police Department, which culminated in Harvey receiving a substantial settlement. *Id.* Upon his move, Harvey was met with the same harassment that he had received from Mamaroneck Police Department, only this time from the Greenwich Police Department. *Id.* at ¶¶ 9, 11–12. One instance of harassment is of significance.

On August 19, 1996, several Greenwich Police Officers forcefully entered Harvey's home without a warrant and brutally assaulted him. *Id.* at ¶¶ 25–45. Officer Kordick arrested Harvey for disorderly conduct and interfering with an officer. *Id.* at ¶¶ 45, 49. Several days later, Harvey appeared in court and entered a plea of not guilty, maintaining that the arrest was in violation of his Fourth and Sixth Amendments rights. *Id.* at ¶ 60.

As the case was pending, Harvey continued to experience harassment from Officer Kordick and other officers alike. *Id.* at ¶¶ 62–63. In fact, it reached a point where Harvey's counsel recommended that Harvey move because he "didn't want to feel responsible if [Harvey] stayed in Greenwich and the police killed [him]." *Id.* at ¶ 64. Acting on that advice, Harvey moved to California. *Id.* at ¶¶ 65, 78.

In California, the abuse continued. Previously, Harvey was not required to attend the Connecticut criminal court proceedings in-person. *Id.* at ¶ 66. But his attorney filed a motion to withdraw from the case, and in doing so, made false statements about Harvey. *Id.* at ¶¶ 78–83. Nonetheless, the motion was granted, which prompted the judge to increase Harvey's bond to $5,000 and issue a capias to compel his appearance at the next court date in Connecticut. *Id.* at ¶ 86. Further, Greenwich Police faxed authorities in Santa Monica, California a warrant demanding that Harvey be arrested and held for extradition. *Id.* at ¶ 87. As a result, Harvey was jailed for 36 hours and held on $5,000 bail. *Id.*

Ultimately, Harvey's criminal case was not dismissed until August 20, 2015 because of "the misconduct by the Greenwich Police and the Prosecutor." *Id.* at ¶ 1, 87, 91.

### B. Procedural History

Against Kordick, Harvey brought four claims—false arrest, excessive force, malicious prosecution and slander. Kordick moved to dismiss all the claims against him. After rounds of briefing and oral argument on the issue, I permitted only the malicious prosecution claim to go forward.[1] *See Harvey v. Town of Greenwich*, 2019 WL 1440385, at *8 (D. Conn. Mar. 31, 2019).

To reach that holding, I explained that in order to prevail on his malicious prosecution claim, Harvey needed to establish that he "suffered a post-arraignment liberty restraint sufficient to implicate his Fourth Amendment rights." *Turner v. Boyle*, 116 F. Supp. 3d 58, 85 (D. Conn. 2015); *see also Rohman v. New York City Transit Auth.*, 215 F.3d 208, 215 (2d Cir. 2000) ("In order to allege a cause of action for malicious prosecution under [section] 1983, [plaintiff] must assert ... that there was [ ] a sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights.") (cleaned up). Importantly, I held that Harvey had "sufficiently alleged a seizure for purposes of his malicious prosecution claim" based on his allegations that:

(1) A Connecticut state court judge increased Harvey's bond in Connecticut to $5,000 and issued a capias to compel Harvey's appearance at a subsequent court date; and

(2) Greenwich Police contacted authorities in Santa Monica, California and asked that Harvey be held for extradition, at which point Harvey was jailed for 36 hours and held on $5,000 bail.

---

[1] The remaining claims were dismissed with prejudice because they were barred by the statute of limitations. *See* Conf. Memo. and Order, Doc. No. 38, at 2. As for the instant claim, the statute of limitations does not begin to run on a federal malicious prosecution claim until the claimant obtains a favorable termination." *Gojcaj v. City of Danbury*, 2016 WL 67688, at *6 (D. Conn. 2016). The charges against Harvey were dismissed on August 20, 2015 and he filed his complaint on August 22, 2017, well within the three-year statute of limitations. *See Lounsbury v. Jeffries*, 25 F.3d 131, 1333–34 (2d Cir. 1994).

*See Harvey*, 2019 WL at 1440385 *9; *see also* Am. Compl., Doc. No. 11, at ¶¶ 86–87. Since that ruling, this case has badly stagnated.

    *i.*    First Extension

Discovery was initially set to be completed by May 26, 2020. Acting on that timeline, Harvey served Kordick with a discovery request in November 2019. *See* Request for a Status Conf., Doc. No. 65, at 1.[2] Kordick produced the responsive documents to Harvey on March 20, 2020. *Id.* at 2.

Around the same time, Kordick served Harvey with a written discovery request[3] in December 2019. *Id.* A month later, Harvey requested a 30-day extension of time to respond to Kordick's discovery request. *Id.* Kordick agreed. *Id.* Sometime in March 2020, notably the period when the coronavirus hit the United States, Harvey contacted Kordick to suggest that the parties file a joint motion to extend the discovery deadlines by six months. *Id.* Kordick stated that he was amenable to an extension but requested a shorter duration. *Id.* at 2–3. No motion followed.

In May 2020, Kordick contacted Harvey to obtain a status update. *Id.* at 3. At that point, Harvey indicated that he still required a six-month extension. *Id.* On May 26, 2020, the date discovery was set to be completed, Kordick filed a motion requesting a status conference to discuss the scheduling order. *Id.* at 1. Three days after the close of discovery, Harvey filed a motion for an extension of time. *See* Mot. for Extension of Time, Doc. No. 68. In it, Harvey contended that:

> While I can respond to some of these requests, I cannot respond to others due to the COVID-19 [p]andemic. Some of the documents requested are in a storage facility,

---

[2] The motion was docketed as a motion for an extension of time but is captioned "Request for Status Conference Concerning Modification to the Scheduling Order."
[3] That request included: (1) Kordick's first set of interrogatories; and (2) requests for production. *See* Doc. No. 65-1.

>in another [s]tate, more than 2,000 [miles] from my home. Though I had saved for and planned a trip to retrieve those documents earlier this year, the [q]uarantine [l]ockdown completely disabled me from making this trip earlier. Now, and in the [immediate] future, even as some restrictions are being lifted, this trip remains both unsafe, impracticable and unduly burdensome.

*Id.* at ¶ 7.

On June 15, 2020, I held a telephonic status conference with the parties. *See* Conf. Memo. and Order, Doc. No. 72. During that conference, I reset the discovery deadlines and ordered that: (1) by September 15, 2020, Harvey must respond to Kordick's already-served interrogatories and requests for production; and (2) by December 15, 2020, all discovery shall be completed. *Id.*

ii. Second Extension

On November 11, 2020, Kordick filed a consent motion seeking to extend the discovery deadline by four months. *See* Mot. for Extension of Time, Doc. No. 81. The extension was requested because, among other things, Harvey had failed to respond to Kordick's written discovery requests by the court-imposed deadline of September 15, 2020. *Id.* at 2. Instead, Harvey had waited until October 9, 2020 and October 19, 2020 to provide responses and objections. *Id.*; Pl.'s Answer to Interrogatories, Doc. 82-2.

The next day, on November 12, 2020, Kordick filed a motion to compel seeking Harvey's responses to the outstanding discovery. Doc. No. 82. I held a status conference on December 2, 2020. *See* Conf. Memo. and Order, Doc. No. 86. On that call, we discussed the need for Harvey to produce the audio tapes and documents that he has in storage in California. *Id.* at 1–2. Because Harvey largely agreed that he needed to produce the documents but was awaiting a time to travel, I denied the motion to compel without prejudice. *Id.* at 2. Additionally, I granted the parties' consent motion for an extension of time and held that all discovery needed

5

to be completed by April 15, 2021 with the caveat that Harvey may make a motion for an extension of time should that timeline prove to be infeasible. *Id.* at 1–2.

    *iii.*    *Third Extension*

Anticipating the April 2021 discovery deadline, Kordick filed a second motion to compel, doc. no. 88, with an accompanying memorandum, doc. no. 90, in February 2021. This time, Kordick sought an order compelling Harvey to comply with the requests for production, including producing the audio tapes and documents in storage. *See* Mot. to Compel, Doc. No. 88, at 2. On March 23, 2021, Kordick filed a second motion to modify the scheduling order because he had "not received numerous items ordered by the Court." *See* Second Mot. for Extension of Time, Doc. No. 93.

On March 30, 2021, I held a status conference to discuss both motions. *See* Conf. Memo. and Order, Doc. No. 98. Following that conference, I issued several relevant discovery orders ("April 2021 Order"). First, I ordered that, by May 31, 2021, Harvey needed to produce "all relevant documents within his possession, custody, or control regarding the case or cases brought against him in California that are described in his amended complaint." *Id.* at 1. I also ordered that, by July 1, 2021, Harvey needed to produce:

> (1) relevant documents regarding those California case(s) that are not currently within his possession, custody, or control because they are sealed court records;
> (2) all relevant recordings of Mark Kordick within his possession, custody, or control, including a relevant recording that is in storage in California;
> (3) all relevant recordings of incidents involving police officers at his home in 1996 and any and all transcripts of such recordings within his possession, custody, or control; and
> (4) the photographs in his possession, custody, or control that are referenced in paragraph 56 of the amended complaint, which apparently depict his injuries.

6

*Id.* at 1–2. As reflected in the April 2021 Order, I indicated that those deadlines could be extended for good cause. *Id.* at 2.

    iv.    *Fourth Extension*

In June 2021, a third motion to compel by Kordick followed. Doc. No. 100. In that motion, Kordick asserted that Harvey had not produced "any of the items" outlined in the April 2021 Order by May 31, 2021. *Id.* at 1. Because of that failure, Kordick requested that I issue an order alerting Harvey that failure to comply with the April 2021 Order would result in the sanction of dismissal with prejudice. *Id.* Several days passed, and Harvey did not file a response or objection to Kordick's motion. On June 8, 2021, I issued an order ("June 2021 Order") clarifying that Harvey was not required to produce all the items outlined in the April 2021 Order by May 31, 2021. Order, Doc. No. 102. Accordingly, I only granted Kordick's motion with respect to the production that was due by May 31, 2021 and ordered that Harvey make such production by June 29, 2021. *Id.* Importantly, I warned that if Harvey did not comply with that order, I would "dismiss this case with prejudice." *Id.* The July 1, 2021 deadline for production of the remaining discovery items remained intact, and I reset the overall discovery deadline to August 2, 2021. Order, Doc. No. 104.

    v.    *Fifth Extension and Deposition Issue*

In July 2021, I ordered the parties to file status reports regarding Harvey's compliance with the April 2021 and June 2021 Orders. *See* Order, Doc. No. 105. Both parties filed status reports. *See* Def.'s Status Reports, Doc. Nos. 106 and 107 (sealed); Pl.'s Status Report, Doc. No. 110. The reports indicated that Harvey was not in full compliance with my prior discovery orders. Furthermore, the reports raised a new dispute regarding whether Harvey's deposition should occur remotely or in person. Around the same time, Kordick filed two motions to dismiss

on the basis that Harvey had, to date, failed to comply with my discovery orders, doc. nos. 108, 113, and a motion to modify the scheduling order, doc. no. 115.

After reviewing the report and the motions, I issued an order on August 23, 2021 ("August 2021 Order"). Order, Doc. No. 117. Of significance here, that order required Harvey to produce the several recordings, transcripts, and photographs outlined in the April 2021 Order by October 22, 2021. *Id.* at 9. On the deposition issue, I ordered that the parties report back to me after they had met and conferred, but that regardless of the manner of the deposition, it must occur before November 8, 2021. *Id.* at 10. I also ordered that "[d]iscovery will close in this matter on November 8, 2021," and I stated that I could not "conceive of any good reason that would warrant extending that deadline." *Id.* at 11. And finally, I denied Kordick's motions to dismiss because I chose to "exercise my discretion not to sanction Harvey." *Id.* at 10 n.4, 12 n.5. But I made clear that "both parties are on notice that I will very likely impose sanctions upon any party who does not comply with my discovery orders moving forward." *Id.* at 12 n.5.

    vi.    *Sixth Extension*

In September 2021, Kordick and Harvey filed several notices regarding the status of their discussions about the manner of Harvey's deposition. Def.'s Report, Doc. No. 118; Pl.'s Status Report, Doc. No. 119. In response, I held a status conference with the parties. *See* Min. Entry, Doc. No. 122. During that lengthy conference, Harvey reiterated that he is uncomfortable with the idea of traveling during the pandemic, whether that be for the purposes of a deposition or retrieving the documents held in storage. After affording Harvey an opportunity to be heard, I, again, extended the discovery timeline. This time, I ordered that Harvey must produce all outstanding discovery by March 15, 2022. *See* Conf. Memo. and Order, Doc. No. 123; Supp. Conf. Memo. and Order, Doc. No. 124. Further, I ordered that all discovery, including

depositions, must be completed by April 15, 2022. *See* Conf. Memo. and Order, Doc. No. 123. Regarding the manner of the deposition, I held that it must proceed in-person in Connecticut. *Id.*

    vii.    *Continued Requests for Extension and Present Motions to Dismiss*

On December 31, 2021, Harvey filed a motion to reset the discovery deadlines due to the COVID-19 Omicron surge. Doc. No. 125. I denied that motion. Order, Doc. No. 128. Critical to my reasoning was that continuing to "grant[] such requests will delay this case even further, resulting in prejudice to [Kordick]." *Id.* The order went on to say that:

> Harvey must produce all outstanding discovery, including the records in storage, by March 15, 2022. The deadline for the completion of discovery is April 15, 2022. Defendant's deposition of Harvey shall go forward in-person in Connecticut at Defendant's law office. **If Harvey fails to adhere to any of these deadlines or orders, I will dismiss this case with prejudice**.

*Id.* (emphasis in original). On March 16, 2022, after the March 15, 2022 deadline, Harvey filed what I construe to be a motion for an extension of time. Doc. No. 129. On that same day, Kordick filed a motion to dismiss based on Harvey's failure to produce all outstanding discovery. Doc. No. 130. Several days later, Kordick filed a second motion to dismiss because Harvey failed to appear for his properly noticed deposition. Doc. No. 134. Harvey objected to both motions, doc. nos. 138, 142, to which Kordick filed a reply, doc. no. 142. On May 11, 2022, I held a telephonic hearing on the motions. *See* Min. Entry, Doc. No. 146. I declined to issue a ruling at that time and expressed that I would take Korick's motions under advisement, but would likely not issue a written decision until at least June 1, 2022. In doing so, I alerted Harvey that if he had complied with my discovery orders before June 1, 2022, the motions to dismiss would likely be moot. Nonetheless, June 1, 2022 came and went with no filing by Harvey. Kordick, however, filed a status report indicating that Harvey had still not produced all outstanding discovery. *See* Status Report, Doc. No. 151, at 2.

## II.     STANDARD OF REVIEW

Federal Rule of Civil Procedure 41(b) provides that "[i]f the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it." A central purpose of the rule is to prevent "undue delays" and "congestion in the calendars of the District Courts." *Link v. Wabash R.R. Co.*, 370 U.S. 626, 629–30 (1962). Thus, a court need not even wait for a motion to dismiss because district courts are "necessarily vested" with the control required "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Id.* That inherent authority includes the ability to dismiss an action with prejudice where a plaintiff fails to prosecute his case. *Id.* at 630–31.

Pursuant to the law of this Circuit, five factors must be weighed by this Court in considering a Rule 41(b) dismissal: "(1) the duration of the plaintiff's failure to comply with the court order, (2) whether [the] plaintiff was on notice that failure to comply would result in dismissal, (3) whether the defendants are likely to be prejudiced by further delay in the proceedings, (4) a balancing of the court's interest in managing its docket with the plaintiff's interest in receiving a fair chance to be heard, and (5) whether the judge has adequately considered a sanction less drastic than dismissal." *Baptiste v. Sommers*, 768 F.3d 212, 216 (2d Cir. 2014) (quoting *Lucas v. Miles*, 84 F.3d 532, 535 (2d Cir. 1996)) (cleaned up). "No single factor is generally dispositive." *Id.* (citing *Nita v. Conn. Dep't of Envtl. Prot.*, 16 F.3d 482, 485 (2d Cir. 1994)).

While dismissals under Rule 41(b) are reviewed for abuse of discretion, the Second Circuit has stressed that such a dismissal is the "harshest of sanctions" and must "'be proceeded by particular prerequisites,' including 'notice of the sanctionable conduct, the standard by which it will be assessed, and an opportunity to be heard.'" *Id.* at 217 (quoting *Mitchell v. Lyons Prof'l*

*Servs., Inc.*, 708 F.3d 463, 467 (2d Cir. 2013)). Indeed, "even where the court issues a notice of possible dismissal and a plaintiff does not comply with the court's directive, the court must still make a finding of 'willfulness, bad faith, or reasonably serious fault' by evaluating those criteria." *Id.* (quoting *Mitchell*, 708 F.3d at 467). Moreover, the Second Circuit has instructed that dismissal "should be used in only extreme situations." *Id.* (quoting *Mitchell*, 708 F.3d at 467) (cleaned up).

### III.  DISCUSSION

In the case at the bar, I find that dismissal of this action under Rule 41(b) to be appropriate and—indeed—necessary, considering the factors articulated in *Baptiste*.

A.  <u>Duration of Delay</u>

The first factor requires a court to analyze the duration of delay. Generally, courts consider (1) whether the delays were attributable to the plaintiff and (2) the duration of the delay. *See U.S. ex. rel. Drake v. Norden Systems, Inc.*, 375 F.3d 248, 255 (2d Cir. 2014) (citing *Martens v. Thomann*, 273 F.3d 159, 180 (2d Cir. 2001)).

In this case, the length of delay is over two years. Discovery was initially set to be completed in May 2020. It is now August 2022. Yet still, Kordick is without the documents and audio recordings that he requested in December 2019. Based on the record, Harvey has not demonstrated that he has taken diligent steps to obtain this necessary discovery. The delay is excusable, Harvey contends, because of the COVID-19 pandemic. I disagree.

Admittedly, Harvey is not entirely at fault for the two-year delay; the COVID-19 pandemic has undoubtedly imposed challenges. Still, he bears responsibility for at least half, if not more, of the delay. Over the last two years, there have been periods where, with the necessary precautions, it would have been safe for Harvey to fly, or even drive, to California to

11

retrieve the requested items. *See Jones v. Cuomo*, 542 F. Supp. 3d 207, 215 (S.D.N.Y. 2021) ("In recent months … much of the United States [] has made progress towards the resumption of 'normal' life, largely because of improved vaccine availability and the overall decline in COVID-19 cases and hospitalizations."). But Harvey chose not to travel. Moreover, Harvey has not provided any explanation about why he could not solicit a friend, a relative, or hire someone based in California to retrieve and mail the items to him. Adding to the problem is the fact that Harvey has not been diligent in seeking to meet discovery deadlines. In fact, Harvey's practice is to let the discovery deadline pass and leave Kordick to file motions to modify the discovery schedule. In the end, the pandemic cannot and does not rid Harvey of his obligation to prosecute *his* case.

The Second Circuit has recognized that delays of as little as six months are "significant" for the purposes of this analysis, and that a "17-month delay" is certainly significant. *Drake*, 375 F.3d at 255; *see also Headley v. Fisher*, 559 F. App'x. 83, 84 (2d Cir. 2014) (holding that when plaintiff's "failure to prosecute resulted in a nearly year-and-a-half delay from the originally scheduled trial date," this weighed in favor of dismissal) (summary order). Thus, Harvey's delay of at least one year is beyond sufficient to demonstrate that this factor supports dismissal.

B. Notice

The second factor asks whether the party was given notice that further delays would result in dismissal. The Second Circuit has made clear that the "sanction of dismissal with prejudice may be imposed even against a plaintiff who is proceeding *pro se*, so long as a warning has been given that noncompliance can result in dismissal." *Valentine v. Museum of Modern Art*, 29 F.3d 47, 50 (2d Cir. 1994) (per curiam) (collecting cases).

There can be no question that Harvey received ample notice that continued noncompliance would result in dismissal. The June 2021 Order stated I would "dismiss the case with prejudice" if Harvey did not comply with my order. Order, Doc. No. 102. That warning was reiterated again in my August 2021 Order. Order, Doc. No. 117. And it was reiterated a third time when I denied Harvey's January 2022 request to reset the discovery deadlines. There, I unambiguously stated: **"If Harvey fails to adhere to any of these deadlines or orders, I will dismiss this case with prejudice."** Order, Doc. No. 128 (emphasis in original). Those three warnings are more than enough notice in the Second Circuit and weigh in favor of dismissal. *See, e.g.*, *Chavis v. City of New York*, 2018 WL 6532865, at *1 (S.D.N.Y. Oct. 12, 2018), *report and recommendation adopted*, 2018 WL 6528238 (S.D.N.Y. Dec. 11, 2018), 2018 WL 6532865, at *4 (finding two warnings from the court sufficient to warrant dismissal).

C. Prejudice to Defendants

The third factor asks whether the defendant would be prejudiced by further delays. Put simply, the prejudice to Kordick cannot be overstated. From the outset, Kordick has been prejudiced by the age of the case and the fact that the underlying events allegedly occurred nearly 26 years ago. And, that prejudice continues to compound as this case remains pending. *See Gaeta v. Inc. Vill. of Garden City*, 644 F. App'x. 47, 48 (2d Cir. 2016) (holding that, where a party sought to reopen a case twelve years after the underlying events in the complaint took place, the defendants were "surely" prejudiced).

Additionally, Kordick has been unable to defend the case without the outstanding discovery. Rather than move to the next stage of litigation, Kordick has had to wait, file numerous motions to compel, and attend numerous status conferences—all of which cost money. *See Southridge Partners II, LP v. SND Auto Grp., Inc.*, 2020 WL 5074296, at *2 (D. Conn. Aug.

27, 2020) (finding that "the Defendants have faced prejudice by incurring costs and attorneys' fees to defend a case that [the plaintiff] is not prosecuting").

Continuing to grant Harvey's extensions will leave Kordick in limbo. It is unclear when the pandemic will subside enough, if ever, for Harvey to feel comfortable to travel. Moreover, Harvey continues to find new reasons to delay this case, including the Ukraine-Russia war (doc. no. 129), a hurricane in Florida (doc. no. 152), and most recently, the potential eviction he may be facing (doc. no. 160). Certainly, I am sympathetic to Harvey's health concerns and financial circumstances. And for a while, I found those concerns to be a sufficient basis to continue extending the discovery timeline. But a case cannot be effectively stayed because a litigant requires perfect conditions to prosecute his case—especially at the expense of another party.

### D.  Balance Between Calendar Congestion and the Opportunity to be Heard

Under the fourth factor, "a court considers the balance between district court calendar congestion and the plaintiff's right to an opportunity to be heard." *Drake*, 375 F.3d at 257. Harvey contends that he wants to prosecute his case. His actions say otherwise. Throughout the life of this case, I have given Harvey numerous opportunities to move the action forward. Six extensions have been granted. Yet, Harvey has missed deadlines and has forced the case to remain stagnant. Moreover, Harvey's conduct has required me to issue multiple orders and hold multiple hearings. It would not be an efficient use of the Court's resources to allow this case to stay on the docket for any longer than it already has. Accordingly, the fourth factor favors dismissal.

### E.  Consideration of Lesser Sanctions

Lastly, I must consider whether "lesser sanctions would [be] sufficient to remedy any prejudice resulting from plaintiff's delay." *Drake*, 375 F.3d at 257 (cleaned up). "[D]istrict

courts are not required to exhaust possible lesser sanctions before imposing dismissal or default if such a sanction is appropriate on the overall record." *New England Tel. Co. v. Global NAPs Inc.*, 624 F.3d 123, 148 (2d Cir. 2010)).

As the record reflects, there is no indication that Harvey will *ever* respond to Kordick's requests in a satisfactory fashion. Thus, a lesser sanction would likely have *zero* effect and would unnecessarily prolong this litigation. In these circumstances, I find that the only reasonable remedy is the sanction of dismissal.

## IV.   CONCLUSION

In sum, Harvey has willfully allowed this case to stagnate. The cycles of delay, excuses, and extensions must end. Accordingly, Kordick's motion to dismiss, doc. no. 130, is **granted**, and this case is dismissed with prejudice. Kordick's second motion to dismiss, doc. no. 134, is denied as moot. The Clerk is directed to enter judgment in accordance with the terms of this order and close this case.

So ordered.

Dated at Bridgeport, Connecticut, this 17th day of August 2022.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge